No. 22,684.

CRESENCIA ROMEREZ, *Appellee,* v. SWIFT & COMPANY,
*Appellant.*

SYLLABUS BY THE COURT.

COMPENSATION ACT—*Death of Workman—Injury Did Not Arise Out of
the Employment.* The deceased, with another Mexican, was engaged
in trucking livers in the defendant's packing house. An altercation
occurred between him and a colored ox-tail trucker resulting in a fight
which was reported to the foreman. Shortly after this the colored man
and another workman were engaged in trucking ox tails, when the de-
ceased and his partner coming along within ten or twelve feet of them
were abused and called names by the colored workmen. The two Mexi-
cans left their truck and approached the colored men and engaged in
an altercation with them, during which one of the colored men stabbed
and killed the deceased. *Held,* that the injury did not arise out of the
employment, and, therefore, the defendant is not liable.

Appeal from Wyandotte district court, division No. 1; ED-
WARD L. FISCHER, judge. Opinion filed May 8, 1920. Reversed.

*Russell Field,* of Kansas City, Mo., for the appellant.

*A. J. Herrod,* and *H. S. Roberts,* both of Kansas City, for the
appellee.

The opinion of the court was delivered by

WEST, J.: Cresencia Romerez brought this action to re-
cover for the death of her son, Juan Romerez, at the defend-
ant's packing house, and recovered. The defendant appeals.
Juan Romerez and Jose Lopez were meat truckers, as was also
a fellow worker, Basil Sims. The duty of Juan and Jose was
to truck beef livers and hang them on racks. A quarrel arose
between Sims, a trucker of ox tails, and Juan, resulting in an
injury to the latter and some loss of blood, which caused the
foreman to send him to the doctor's office. Jose did not wish
to continue the work of trucking alone and was told to wait
until his partner, Juan, returned. Sims got behind with his
work, and another employee named Hall was sent to assist him.
When Juan and Jose passed these two it is claimed that Hall
made insulting remarks which caused a quarrel between him
and Juan. Hall ran to another part of the building, secured a

knife, returned and stabbed Juan, who died almost instantly. The claim of the defendant was and is that the death was not an injury by accident arising out of and in the course of his employment.

It is argued that in entering upon a quarrel with Hall, and stopping at the rack where Hall and Sims were working, Romerez departed from his employment and was not engaged in the duty he was employed to perform, but, on the contrary, was interfering with the employer's business. One witness testified:

"When we came in Sims was up on this keg hanging tails and Hall was standing on one side. We were passing Sims and Hall to take our truck about ten or twelve feet beyond them, when Hall started calling us names. We stopped there because be began saying things. Juan and Sims began to argue and Hall went after the knife."

### Another witness testified:

"The Mexicans left the truck in the alley and come back to the negroes. The negroes started hollering. Told the Mexicans to 'get out.' I was about 30 feet away. The Mexicans and the negroes were jumping back and forth. I saw the negro hit the Mexican and he turned around and fell."

### Another workman:

"Sims was hanging tails; Mexican say to Sims, 'I say I get you; you got me.' Mexican stopped pushing truck and take knife and jump for Sims. Sims was on a tierce. Hollis Hall say 'get out of the way Mexican —get out of the way Mexican,' and Mexican jumps for Sims and Sims holler and was scared and this Mexican jumping all the time for Sims, and Hall holler 'get out of the way, Mexicano; I hit you.' . . . I was within five feet of them when the Mexican was stabbed. . . . He (the Mexican) called Sims a ———, and jumped for Sims with a knife."

Quite an attempt was made to show that Hall was sent down as a peacemaker, but objections were sustained and the attempt failed. Offers were made to prove that the foreman instructed Hall to go down and work with Sims, and if there was any trouble between the Mexicans and Sims to stop it; also, to prove that Hall had stated that the foreman sent him down to work with Sims, and if there was any trouble down there he was instructed to stop it. Lopez testified that the foreman told Sims to go back to work, and Sims said he was afraid of the Mexicans; that the foreman told him not to worry, he would get him another partner "so they won't jump on you." Sims himself testified that after the first fight when the Mexicans

both jumped on him he went upstairs to the boss, and the Mexicans were there, and told the foreman that he had had a fight with them and did not care to go back there any more. Repeated efforts were made to get Sims to say that the foreman told Hall to go downstairs to work with him, and that if there was any further trouble to stop it. He was finally induced to say that he had made the statement to someone that the foreman told Hall to go down and help him catch up with his work, and "if the Mexicans started anything to get out of there and not have nothing to do with them." This all indicates that if there was any direction by the foreman for Hall to quiet any disturbance it was on the theory that the Mexicans might start a disturbance, and not the colored boys, and the testimony already quoted indicates that, aside from the abusive language used, the assault started from the Mexican side. At least, there is nothing in the record to show, and had the offered evidence been received there would have been nothing to indicate, that the foreman had any reason to think there would be an assault by Sims and Hall on the Mexicans, or either of them.

It is quite clear that had the deceased been working elsewhere he would not have been in danger, and that the trouble with Sims arose out of a collision quite liable to occur at such work, and that the fatal fight was a result, direct or indirect, of the Sims altercation. Whether the injury arose out of the employment remains to be seen.

It is contended by the defendant that the court should not have held the employer liable unless the danger of being assaulted, either willfully or sportively, inhered in the nature of the employment, and it is said that in all of the cases found in the books where the employer has been held liable the injured man was hurt in the course of his employment and was not actuated by feelings of animosity towards his fellow workmen. It is also contended that Romerez and Lopez stopped their truck and came to the place where Hall and Sims were at work on account of the names the former had been called by the latter, and that Romerez turned aside and stopped his work for his employer and entered into an altercation whereby he lost his life, owing to his personal animosity towards Hall.

While it might be plausibly argued that the foreman must have known after the encounter between the deceased and Sims

that in the very course of nature another altercation might result from throwing them together, and that in permitting Lopez to wait until his partner returned from his interview with the doctor the foreman expected him to have the protection which a working partner might afford, and, hence, had a reasonable suspicion that such protection might be necessary, the serious block to this line of reasoning is that there was no assault except by words until the Mexicans left their truck and engaged in their quarrel with the negroes ten or twelve feet away, and it is impossible to say that this situation was one reasonably to be expected by the employer. However much provocation or justification may have existed for the resentment felt by Romerez on account of the abusive language used by the negroes, the fact remains that he stepped aside from his work and left his task to settle this matter of personal spleen. It cannot be held that in so doing he was in the line of his employment, or that the regrettable result arose out of such employment. (Kiser, Workmen's Compensation Acts, p. 80, § 72; *Jacquemin v. Turner & Seymour Mfg. Co.*, 92 Conn. 382; *Griffin v. Robertson & Son*, 176 App. Div. [N. Y.] 6; *Stuart v. Kansas City*, 102 Kan. 307, 171 Pac. 913; *White v. Stock Yards Co.*, 104 Kan. 90, 177 Pac. 522; *Benson v. Railway Co.*, 104 Kan. 198, 178 Pac. 747; *Thomas v. Manufacturing Co.*, 104 Kan. 432, 179 Pac. 372.)

" 'The injury by accident must have occurred as something which would not have occurred but for the circumstance of the employment and as having been something due to it—the employment—and it must further have occurred during its currency.' " [*Lord Haldane in Lancashire & Yorkshire Ry. v. Highley*, 15 N. C. C. A. 210, 244.] (*Benson v. Railway Co.*, 104 Kan. 198, 203, 178 Pac. 747.)

The judgment is reversed with directions to enter judgment in favor of the defendant.