Stark v. Wilson, *Receiver*.

---

No. 25,007.

OLIVIA STARK *et al.*, *Appellees*, v. FRANCIS M. WILSON AND FRED W. FLEMING, as Receivers, etc., *Appellants*.

SYLLABUS BY THE COURT.

1. COMPENSAION ACT—*Injury and Death of Street-car Conductor—Action Properly Brought Under the Workmen's Compensation' Act.* The proceedings considered, and.*held,* the state workmen's compensation act was properly invoked in an action to recover on account of the injury and death of a street-car conductor employed by the receivers of the Kansas City Railways Company, instead of the federal employers' liability act.

2. SAME—*Injury Arose Out of the Conductor's Employment.* While standing on the rear platform, operating his car, and without fault on his part, the conductor was stabbed and killed by a passenger. *Held,* the injury arose out of the workman's employment.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed October 6, 1923. Affirmed.

*E. S. McAnany, M. L. Alden, T. M. Van Cleave,* and *O. L. Miller,* all of Kansas City, for the appellants.

*Joseph Taggart,* of Kansas City, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one for compensation for the death of a street-car conductor. The dependents recovered, and the receivers of the railway company appeal.

The street railway is an interstate railway, operating in the contiguous cities of Kansas City, Kansas, and Kansas City, Missouri, and the defendants assert the plaintiff should have invoked the federal employers' liability act, instead of the state workmen's compensation act.

By the terms of its charter, the nature of the railway company's business was to operate a street railway for conveyance of persons and mail and express parcels, and it succeeded to the privileges of two street railway companies which had been chartered as such, and had been granted franchises to operate street railways upon and along the streets of Kansas City, Kansas. The court returned the following findings of fact:

"That the defendants each day with their own employees transferred certain passenger cars and freight cars of interurban electric railroads from the ends of the lines of said interurban railroads in the state of Kansas, to Kansas City, Missouri, and from Kansas City, Missouri, to the ends of said interurban electric railroads in the state of Kansas.

"That the defendant receivers operated a street railway for the carriage of passengers, and also carried parcels and mail, and hauled freight cars for interurban railways between the states; but the business other than passenger traffic was only incidental to their business of carrying passengers by street car."

"That the car which he [the deceased] was operating was carrying passengers from Kansas City, Missouri, to Kansas City, Kansas, and was an ordinary street car propelled by electricity, and carried passengers only, for travel upon which fares were paid at a uniform rate for long or short distances, and which car stopped at certain street corners and other places to receive or discharge passengers."

In 1904 this court held that a statute relating to mischief done to railroad property did not apply to street railway property, and approved the decisions of courts of other states holding that in a statute the word "railroad" does not apply to street railways. (*The State v. Cain,* 69 Kan. 186, 76 Pac. 443.) In 1906 it was said that, while the rule of statutory interpretation announced was not inflexible, and would yield to the spirit and purpose of a law, nevertheless it was ordinarily applicable. (*Railroad Co. v. Railroad Commissioners,* 73 Kan. 168, 84 Pac. 755.)

Stark v. Wilson, *Receiver.*

The federal employers' liability act, as originally passed in 1908 and as amended in 1910, applies to every common carrier by railroad. In 1912 the supreme court of the United States held the interstate commerce act, which relates to carriers engaged in transportation of persons or property by railroad, did not apply to street railways, although doing an interstate passenger business. (*Omaha Street Ry. v. Int. Com. Comm.*, 230 U. S. 324.)

In the case of *Washington Ry. & Elec. Co. v. Scala*, 244 U. S. 630, decided in 1917, the court considered the character of a company incorporated as an ordinary railroad company, with power of eminent domain, and operating an electric railroad on private right of way between points in the District of Columbia and the state of Maryland. It was held the company was a suburban railroad, and came within the scope of the employers' liability act. The Omaha case was distinguished on the ground it dealt purely with a street railway in the streets of two cities, and for that reason it was considered of negligible value in construing the employers' liability act and in classifying the interurban road. The decision in the Omaha case, however, was not qualified in any particular, and the inference might be drawn from the decision in the Scala case that the fact an interstate railway is a street railway in the streets of two cities, as in the instant case, answers the question whether the employers' liability act applies.

The question presented is one of federal law, and this court is not prepared to say the differences between railroads and street railways, which formerly affected statutory interpretation, were not recognized in framing the employers' liability act. The safety appliance act of 1893, the hours of service act of 1907, and other federal acts of amelioration, preserve, like the employers' liability act, the limitation of applicability to railroads contained in the initial act to regulate commerce.

The defendants say that, in transporting interurban cars and in carrying some freight, their road is a railroad. Not only is the road a street railway, but the finding is, when the accident occurred the conductor was engaged in the ordinary kind of street railway traffic.

The whole story of the killing is told in the following finding of fact:

"That Orville Stark was in his lifetime a street-car conductor in the employ of the defendants, and on the 27th day of December, 1921, he was as such conductor operating a car of the defendants on said North Fifth street in

Kansas City, Kansas, and while he was so operating said car and standing on the rear platform thereof, he was stabbed by a passenger on said car, and then and there, without cause on his part, received a mortal wound at the hands of said passenger, from the effects of which he died a few minutes later."

The defendants contend the injury resulting in death was not occasioned by accident, and did not arise out of the workman's employment. There is no difficulty in saying the conductor met death by accident. (*Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793.) The other question presents some difficulty.

. The tests proposed in the cases cited by the plaintiffs and the defendants are substantially identical, however expressed. The accident must result from a risk naturally and reasonably incident to the employment. The risk must be within rational comprehension as an incident of the employment, and must be one to which the workman would not be equally exposed outside of the employment. It is not enough for the dependents to say the conductor would not have been killed if he had not been at his place on his car at the time he was stabbed. They must say he was killed because he was a street-car conductor on duty, and so was overtaken by a hazard to which performance of his duty exposed him. In applying the tests, the decision of each case will necessarily depend on its own peculiar facts, and in this instance the precedents are not particularly helpful.

It can scarcely be doubted that personal injury inflicted in the perpetration of a robbery is a hazard incident to employment as a street-car conductor. His known possession of some money, and at times of a considerable sum, singles him out as a subject of assault with intent to rob. He is likewise subject to assault by persons in a state of intoxication, by brawlers, and by persons with mental twist or unbalance inclining them to antagonism and violence. A person belonging to one of these classes may go about the streets and mingle in crowds without displaying his proclivities, because there is nothing to focus attention on any specific individual. The street-car conductor is encountered, however, as one having authority and one with whom the passenger must deal. Whatever contrariety and malignity of disposition the passenger may have is thus aroused and centered, and it may be said generally a street-car conductor on duty in a populous city is exposed to peculiar danger from criminal assault because of the fact he is a street-car conductor. While fatalities from this source of injury may be infre-

quent, the risk inheres in the employment. In this instance the conductor was without fault, and so the assault must have been the result of innate malevolence, provoked by the fact, not that he was Orville Stark, but that he was conductor of the car. Therefore, the court holds the workman lost his life through personal injury by accident arising out of his employment, within the meaning of the workmen's compensation act.

The judgment of the district court is affirmed.