No. 41,914

WILLIAM H. HALLETT, *Appellee*, v. J. T. MCDOWELL & SONS and
HARTFORD ACCIDENT & INDEMNITY CO., *Appellants*.

(352 P. 2d 946)

Opinion filed
June 11, 1960.

*Harrison Smith*, of Garden City, argued the cause and was on the briefs
for appellants.

*Don C. Smith*, of Dodge City, argued the cause, and *W. C. Gould* and
*R. R. Mitchell*, both of Dodge City, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: In this workmen's compensation case the appellant
employer, J. T. McDowell & Sons, and its insurance carrier contend
there was no substantial competent evidence to sustain the district
court's findings: (1) that the claimant sustained personal injury
by accident on September 20, 1958, arising out of and in the course
of his employment, and (2) that the claimant was 25 percent perma-
nently partially disabled.

In addition to adopting the findings of the commissioner resolving
those questions in favor of the claimant, the district court made the
following findings:

"1. That William H. Hallett, on or about the 20th day of September, sus-
tained personal injuries arising out of and in the course of his employment
with the respondent.

"2. That L. E. Klassen was a superintendent for the respondent and that
he could see imminent danger to claimant on the 20th day of September, 1958,
if Turner was not removed from the job, after Turner had swung a hatchet
around his head and cussed the claimant with vile filthy language in the
presence of Klassen.

"3. That the attack by Turner on the claimant was provoked and caused by
the fact that the claimant was the foreman and that he had just fired Turner from
the job.

"4. That the injuries to the claimant consisted of back, neck, left leg and left foot disability from the injuries of September 20th and difficulty with his right leg from the injury of September 13th, all in 1958.

"5. . . . That as a result of the said injuries of September 13 and September 20, with the disability to claimant's back, neck, left leg, left foot and right leg, the claimant is entitled to 25% permanent partial disability. . . ."

In conformity with those findings the district court rendered judgment in favor of the claimant, and the respondent employer and its insurance carrier have appealed.

We shall discuss the appellant's first contention. In doing so, we refer to the well-established rule of this court that in reviewing a record in a workmen's compensation case, our task is to determine whether there is any evidence which supports the judgment rendered, which is to be considered in the light most favorable to the prevailing party below, and, if there is any evidence to support the judgment it must be affirmed even though the record discloses evidences which, if believed by the district court, might have warranted a finding to the contrary (*Andrews v. Bechtel Construction Co.*, 175 Kan. 885, 267 P. 2d 469; *Barr v. Builders, Inc.*, 179 Kan. 617, 296 P. 2d 1106; *Kafka v. Edwards* 182 Kan. 568, 322 P. 2d 785; *Heer v. Hankamer Excavating Co.*, 184 Kan. 186, 187, 334 P. 2d 372; *Allen v. Goodyear Tire & Rubber Co.*, 184 Kan. 184, 334 P. 2d 370). See, also, 9 West's Kansas Digest, Workmen's Compensation, §§ 1940-1969, and 5 Hatcher's Kansas Digest [Rev. Ed.], Workmen's Compensation, §§ 153, 154.

While the appellants offered evidence that the claimant, a man 6′ 5″ tall and weighing between 235 and 270 pounds, provoked the altercation with Turner, a fellow employee approximately 5′ 9″ tall and weighing 145 pounds, by swearing and throwing a wooden stave at him; that claimant had the reputation among fellow workers of being a bully, and that L. E. Klassen, the superintendent on the job; E. G. Miller, general construction superintendent, and J. T. McDowell, a partner of appellant company, knew nothing of the fighting propensities of claimant and Turner prior to early afternoon of September 20, we are required, under the rule just announced to review the testimony in the light most favorable to the claimant, and, accordingly, summarize and quote pertinent portions thereof:

In the fall of 1958 the appellant, J. T. McDowell & Sons, was constructing an addition to a tubular cement grain elevator at Ulysses, Kansas. On September 8, Klassen hired claimant as a carpenter

foreman. Prior to that time he had hired a carpenter by the name of Turner. On the first day of claimant's employment, Turner took him aside and told him he was not taking any trouble off of him. After that conversation, claimant talked with Klassen and advised him Turner was a trouble maker, and Klassen said, "we will get rid of him." Later, claimant again spoke to Klassen about trouble with Turner and Klassen stated, "I kind of halfway promised him a carpenter foreman's job when I hired him. I told him he could go to work as a carpenter and if he could hack that, I would give him the carpenter foreman's job. . . . That is what I believe he is mad about." A day or two before the explosive events of September 20, claimant complained to Klassen about Turner not co-operating with him and Klassen said, "He is off his rocker, isn't he? We better get rid of him."

On September 13, claimant received an injury to his knee and lower right leg requiring twelve stitches, however, this appeal involves the injury claimant received on September 20, under the following circumstances: Shortly after noon on that date claimant was directing several men, including Turner, to lift a large form in which to pour concrete. In response to a remark from the claimant that he was not talking to him, Turner said, "By God I am talking to you. If you got anything to say to me, right now is a good time to say it." Following that incident, claimant went into the office and told Klassen, "I either want my check or you give him his." Claimant testified Klassen said, "We should have gotten rid of him before. He is mad because I didn't give him your job." In his testimony, Klassen did not deny making that statement. After writing and signing Turner's check and handing it to claimant to deliver to Turner, Klassen got into his car and went to town. (As carpenter foreman, claimant had the authority to discharge a carpenter, however, a discharge could not be effective until Klassen signed the check so the practical result of the employer's policy was that without Klassen's approval, Turner could not have been fired.) The claimant took the check out to where Turner was working and handed it to him and said, "Here is all the conversation you and I are going to have, Turner." Claimant started to walk away and Turner struck at him with a hammer. Claimant turned just in time to catch the blow in the palm of his hand. Claimant ran toward the office with Turner throwing the hammer at him and then menacing him with a knife. When they arrived at the office claimant

picked up a steel rod. When claimant picked up the rod Turner did not advance, but stood there swearing and cussing. Claimant asked the office girl to call the "law." About that time Klassen drove up and asked Turner if he had his check and he said yes, and Klassen told him to get off the job. Turner got a hatchet out of his tool box and in Klassen's presence said, "he was going to kill the claimant and send him back to Oklahoma in a box." Klassen told the claimant to go to the tool shed and put a chain on a saw. As he walked toward the tool shed, Klassen and Turner followed with Turner using vile filthy language and menacingly displaying his hatchet. Claimant asked Klassen how long he would have to take that, and Klassen told him it was pretty hard, but that he was trying to get Turner off the job. Shortly thereafter claimant was called to the office to take a long distance telephone call concerning employment on the job. While there, he called the sheriff. After claimant finished his call, he left the office to continue his work. Since Klassen had been endeavoring to get Turner to leave the job claimant thought Turner would not be around, however, Turner was there. As claimant left the office Turner swung at him with his hatchet. In attempting to get away, the claimant ran backwards and fell into a twenty-foot ditch filled with old cement chunks, alighting on his back. Turner jumped in on top of him with the hatchet. The claimant managed to stop the full force of the blow, but received lacerations on his face and had a four-inch scar from the hatchet cut. About that time the officers arrived for Turner.

In support of their contention that the claimant's injuries did not arise out of the employment appellants strenuously argue that if an employee is intentionally injured by another employee, he cannot recover compensation unless the wrongful conduct has become habitual and the habit known to the employer. They further assert that while the claimant was their carpenter foreman with authority to hire and fire, and that they, as the master, technically might have had notice of the personal feud between the two workmen (*White v. Stock Yards Co.*, 104 Kan. 90, 177 P. 522), nonetheless, since claimant knew from the first day of his employment that Turner was a trouble maker and did not fire him, he may not now assert that Klassen should have known of Turner's fighting propensities thus imposing upon the employer the knowledge that Turner's wrongful conduct was habitual and was known to them, and that since claimant's fall into the ditch was to escape one who had been

a fellow employee, the district court should have found as a matter of law that his injuries did not arise out of the employment. They cite and rely upon *Romerez v. Swift & Co.*, 106 Kan. 844, 189 P. 923; *Peavy v. Contracting Co.*, 112 Kan. 637, 211 P. 1113; *Stark v. Wilson, Receiver*, 114 Kan. 459, 219 P. 507; *Sellers v. Reice Construction Co.*, 124 Kan. 550, 262 P. 19; *Gamble v. Board of Public Utilities*, 137 Kan. 227, 19 P. 2d 729; *Addington v. Hall*, 160 Kan. 268, 160 P. 2d 649, and *Johnson v. Guggenheim Packing Co.*, 168 Kan. 702, 215 P. 2d 178.

It is unnecessary to make an extended review of the authorities cited by the appellants. To do so would unduly lengthen this opinion. Suffice it to say running through all of them is the rule that if an employee is assaulted by a fellow workman, whether in anger or in play, an injury so sustained does not arise "out of the employment" and the employee is not entitled to compensation unless the employer had reason to anticipate that injury would result if the two continued to work together.

We think the evidence amply supports the district court's finding that claimant suffered injury arising out of and in the course of employment. When Klassen returned from town Turner had been given his check and fired from the job. Klassen then took command of the situation. In endeavoring to get the men as far apart as possible he ordered the claimant to the tool shed to put a chain on a saw. But, Turner followed, and so did Klassen. The long distance telephone call which caused claimant to go to the office concerned one who sought employment on the job. That was in the course of his employment as carpenter foreman. When the call was completed he went out of the office to continue with his work. In doing so, he was immediately confronted by Turner who was banishing his hatchet. In his retreat and flight claimant never took a step that was not a part of his employment. The twenty-foot ditch into which he fell was a part of the job. It was just outside the office, and the fall caused his injuries although he received a painful cut from the hatchet. The assault was made upon the claimant, not because he was Hallett, but because he was the foreman.

While the evidence was conflicting whether the employer knew of Turner's fighting propensities, it is evident from the findings that the district court believed the claimant's testimony. That being the case, this record compels the conclusion that prior to September 20, the employer had reason to anticipate injury would result if the

claimant and Turner continued to work together. Notwithstanding that fact, the employer took no action until immediately before the inevitable occurred on September 20, resulting in claimant's injuries. While that injury occurred after Turner was no longer in appellant's employment, we think the district court's finding No. 2 is supported by evidence, and, standing alone, is sufficient as a matter of law to support the finding that the claimant sustained personal injury arising out of and in the course of his employment.

In support of their second contention, the appellants make the positive statement in their brief that "Nowhere in the record is there any evidence that Appellee is 25 percent permanently partially disabled, and therefore, the award should not be allowed to stand." The contention sends us to an examination of Dr. W. G. Rinehart's testimony. Dr. Rinehart saw the claimant on November 12, 1958, and placed him in a hospital in Pittsburg, Kansas. He attended him every day from November 12, to December 4, 1958, taking approximately 14 x-rays. Upon claimant's admission to the hospital Dr. Rinehart placed his neck in traction and put his left lower leg, foot and ankle in a cast. From his physical and x-ray examinations Dr. Rinehart found that claimant had suffered a fracture of the spinous processes of the seventh cervical and first dorsal vertebral bodies. He also found osteo arthritis of the fifth, sixth and seventh cervical vertebrae and of the third, fourth, and fifth lumbar vertebrae and a fracture with separation at the proximal end of the first metatarsal bone with a fracture close to the left ankle.

Prior to the taking of his deposition Dr. Rinehart examined the claimant and found marked limitation of motion in the neck and claimant refused to allow him to bend the head the normal range of motion forward, backward, or laterally, and that the claimant could not stoop or bend and there was swelling of the left ankle and stiffness in his knees. Dr. Rinehart further testified that claimant could not do any physical labor and would not be able to do so for a long period of time, but could perform supervisory work; that his inability to perform physical work as a carpenter was due to his injuries and to the painful and disabling arthritis condition which was activated and aggravated by claimant's fall into the twenty-foot ditch.

It should be stated that the three doctors who testified for appellants contradicted some of Dr. Rinehart's testimony. However, no attempt is here made to relate the appellants' medical evidence since in a review of findings of the district court, this court is con-

cerned only with evidence which supports or tends to support the findings made (*Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846; *Barr v. Builders, Inc.*, 179 Kan. 617, 296 P. 2d 1106). Although the medical testimony was contradictory, there was substantial competent evidence to support the finding of the district court that the claimant was entitled to 25 percent permanent partial disability.

One more point is made by the appellants. They contend that because the claimant was subsequently employed as a supervisor and earned $180 a week he was rendered ineligible as a matter of law to receive compensation under the act. We do not agree. In *Smith v. Jones*, 185 Kan. 505, 345 P. 2d 640, the district court denied compensation to the workman for the reason he had secured subsequent employment and was drawing full pay. This court reversed the judgment, and in the opinion said:

". . . Did the trial court err in its decision wherein it held the appellant is not entitled to any more compensation at all because it did not believe it is proper for a workman to draw full compensation benefits and still work on a job and draw full pay? This question, in our opinion, presents purely a question of law which, under the provisions of G. S. 1957 Supp., 44-556, is within our jurisdiction.

"Conceding there is some lack of uniformity in our reported cases touching on the point now under consideration, we believe the question just posed is answered in our recent decision of *Daugherty v. National Gypsum Co.*, 182 Kan. 197, 318 P. 2d 1012, where it is said and held:

"'. . . Permanent partial disability of an injured workman based upon substantial medical testimony is compensable notwithstanding he may earn as much or more after his injury in the same or other employment. The rule is based upon the fact that partial general body disability is a definite loss to the injured workman, and is a deterrent to his obtaining and retaining work in the open labor market (*Beal v. El Dorado Refining Co.*, supra [132 Kan. 666, 672, 296 Pac. 723]; *McGhee v. Sinclair Refining Co.*, supra [146 Kan. 653, 658, 659, 73 P. 2d 39]; *Rupp v. Jacobs*, supra [149 Kan. 712, 717, 88 P. 2d 1102]; *Davis v. Braun*, supra [170 Kan. 177, 183, 223 P. 2d 958]).' (p. 203.)

"Application of the rule announced in *Daugherty v. National Gypsum Co.*, supra, to which we adhere, means the all decisive question heretofore stated must be given an affirmative answer, as appellant contends, and we so hold." (l. c. 509.)

Having reviewed the evidence and considered all the facts and circumstances in the light most favorable to the prevailing party below, as we are enjoined to do by the rule so often reiterated, we conclude there was substantial evidence to support the findings and judgment of the district court.

The judgment is affirmed.