No. 45,594

Clarence D. Brannum, *Appellant*, v. Spring Lakes Country Club, Inc., and Firemen's Insurance Company, *Appellees*.

(455 P. 2d 546)

Opinion filed June 14, 1969.

*Don Matlack* of Wichita, argued the cause, and *John R. Blair, Ronald H. Rogg, Richard V. Foote, Donald E. Lambdin,* and *Gerald W. Scott,* all of Wichita, were with him on the brief for the appellant.

*Harry E. Robbins, Jr.,* of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is a workmen's compensation proceeding brought by a supervisor who was injured as a result of an assault by a subordinate employee. The assailant has been tried and convicted of the offense of assault with felonious intent (see *State v. Coltharp,* 199 Kan. 598, 433 P. 2d 418).

The workmen's compensation examiner, the director upon review and the trial court upon appeal each denied an award of compensation.

Upon appeal to this court the sole question is whether the trial court's findings that claimant's injury did not arise out of and in the course of his employment within the meaning of the workmen's compensation act is sufficiently supported by the evidence.

The evidence on this issue was undisputed and may be summarized as follows:

Claimant was employed as manager and golf professional of respondent Spring Lakes Country Club. At the time in question he was also acting as greens superintendent in which capacity he was the direct supervisor of greenskeepers. On March 16, 1965, one Gary Coltharp was in respondent's employ as a greenskeeper, having been hired about February 1. He had worked during the previous summer for respondent. He had never had any argument or difficulty with claimant prior to the incident in question. However, the chairman of the greens committee described Coltharp as being "bully" in his ways; that Coltharp thought he was a full-fledged greenskeeper but was not, and that he didn't want to listen to what was told him and appeared to resent being given instructions.

At about 8:30 a. m. on March 16 claimant told Coltharp to mow the greens. At about 10:00 or 10:30 a. m. claimant noticed Coltharp was in the clubhouse and that he had not started the mowing. Claimant asked why he had not commenced to mow. After a brief discussion with Coltharp in which claimant vainly tried to get Coltharp to commence the mowing, claimant told him that if he didn't want to do as he was told he could go home. Coltharp replied, "All right, I am going home"; he also asked for his pay check. Claimant told him the check required two signatures and that he

should come back next day, which was pay day. Coltharp said, "No, I will be back this afternoon and I want you to have my check ready"; he also said he would have the course closed by 5:00 o'clock that evening. Coltharp left. About 1:00 o'clock that afternoon he returned to the clubhouse. He informed another employee he wanted to see claimant. Claimant came out of his office and approached Coltharp. The latter asked if his check was ready yet; claimant replied that it was not. Coltharp said, "Don't come any closer", to which claimant responded, "Well, what's the matter with you?" Coltharp took about three steps, then drew a .22 caliber pistol and started shooting at claimant. Claimant was hit four times and fell to the floor. One bullet struck him in the chest, one in the arm, one in his shoulder and another grazed an arm. While claimant was lying on the floor Coltharp walked up behind him and shot him in the back of the head, saying, "If you are not dead yet, this will do it." Claimant was thereafter hospitalized and was treated by several physicians and surgeons.

In denying compensation the trial court made no findings as to disability or other disputed issues but, as indicated, simply found claimant's injury did not arise out of and in the course of his employment.

In *Siebert v. Hoch*, 199 Kan. 299, 428 P. 2d 825, we stated:

"The two phrases, arising 'out of' and 'in the course of' the employment, as used in our workmen's compensation act (K. S. A. 44-501), have separate and distinct meanings, they are conjunctive and each condition must exist before compensation is allowable.

"The phrase 'in the course of' employment relates to the time, place and circumstances under which the accident occurred, and means the injury happened while the workman was at work in his employer's service." (Syl. ¶¶ 1, 2.)

Here, claimant's injury occurred while he was at work in his employer's service. He was shot while performing duties on behalf of his employer on its premises. It is difficult to conceive a stronger showing of one being injured "in the course of" his employment. Accordingly, we hold, as a matter of law, the trial court erred in finding the injury did not arise in the course of the employment.

The question whether the injury arose out of the course of the employment, ably briefed by counsel for both parties, presents more difficulty.

Respondent points to a line of our cases upon which the examiner, director and trial court relied in determining the injury did not arise out of the course of the employment. The first case we should

notice is *Pevy v. Contracting Co.,* 112 Kan. 637, 211 Pac. 1113. There, the workman seeking compensation was engaged in hauling brick with a team and wagon, assisting in the building of a hard-surface road. A straw boss objected to his hauling more than two loads per day. A higher authority had previously told him to haul as many loads each day as he could. While working with his team, the workman was struck from behind by the straw boss. In denying compensation, this court quoted briefly from six earlier Kansas decisions and without further discussion or analysis concluded:

"From these cases, the rule may be deduced that an employee intentionally injured by another employee cannot recover under the workmen's compensation act unless the wrongful conduct has become habitual and the habit is known to the employer. Here there is nothing to show that the conduct of the foreman was habitual or that the employer had any knowledge of it." (p. 639.)

Two of the cited cases turned on the question whether the claimed accidental injury occurred "on, in or about" the premises of the employer as required by then existing statutes before compensation was allowable. Two of the other cases dealt with horseplay or pranks between fellow employees and stated the familiar rule to the effect that injury arising therefrom does not arise "out of the employment" unless the employer had knowledge of the practice and custom and its continuation had thus become incident to the employment. Another cited case hinged on whether the employer employed the requisite number of five workmen. The remaining case relied on for the rule announced in *Peavy* did deal with an assault by a fellow workman while on the job (*Romerez v. Swift & Co.,* 106 Kan. 844, 189 Pac. 923). Personal animosities had developed between members of different ethnic groups, as a result of which a workman was stabbed and killed. The record contains no suggestion of bad feeling related to work being done and there is no indication the assault occurred other than from reasons purely personal to the participants. Moreover, it was shown the deceased workman "stepped aside from his work and left his task" (p. 847) and became the aggressor in the affray which cost his life and for which compensation was sought and denied.

Thus we see that in *Peavy* consideration was not given to the particular origin or cause of the quarrel and the resulting assault; that is, whether the assault arose from purely personal reasons imported from outside the employment or whether it bore any relation or connection to the work being done. The cases relied upon hardly support the broad conclusion deduced.

The next case particularly relied on by respondent is *Addington v. Hall*, 160 Kan. 268, 160 P. 2d 649, in which fellow employees quarreled as a result of conditions of their respective jobs, one being unwilling to yield any of his overtime hours to a newly scheduled relief worker, although directed by higher authority to do so. The disgruntled one struck and killed the would-be reliever. The trial court found as a fact there was nothing in the conduct or language of the two prior to the fatal affray which would indicate to their employer further trouble would develop and it denied award of compensation on the ground the death did not arise out of the course of the decedent's employment. The claimant widow upon appeal apparently conceded the rule announced in *Peavy* but sought to get around it by contending there was enough evidence of a prior dispute to indicate to the employer trouble between the two was likely to occur. Sufficiency of evidence was thus presented and this court properly construed the evidence in the light most favorable to the party prevailing in the trial court and held against appellant. In doing so the *Peavy* rule was iterated, again without distinguishment between assaults growing out of purely private animosity and those having work connection.

Respondent also points to *Johnson v. Guggenheim Packing Co.*, 168 Kan. 702, 215 P. 2d 178. There claimant and a fellow employee collaborated in moving quarters of beef from a loading dock to a refrigerator car. As claimant lifted a beef from a rail where it was hooked, it was the fellow workman's duty to remove the hook from the beef so that claimant could carry it to the car. Upon this particular occasion claimant lifted the beef but the other workman did not remove the hook. Words were exchanged between the two; claimant threw the beef onto the other's leg and then stepped back; the fellow employee then struck claimant with a steel hook, injuring an eye. Claimant testified the fellow workman had no reason to hit him, that they had been friends. The plant foreman testified the fellow workman was a good worker, had not been in any other fights, had gotten along fine with the claimant and that both were mild-mannered and not fighting men. The trial court held that in the absence of an affirmative showing that the employer had reason to anticipate that injury would result if the two men continued to work together, the injury did not arise out of the employment. Apparently no finding was made as to who was the aggressor. This court affirmed, reiterating *Peavy* and *Addington*.

We should here note that *Peavy, Addington* and *Johnson* each involved a factual situation where, patently, working requirements or conditions were a factor in the disagreement leading up to the actual assault. We should also note the same rule announced in those cases has been stated in other decisions which did not involve assaults growing out of working requirements or conditions and also in decisions involving assaults related to working conditions (either intentional or sportive) in which compensation was allowed because the assaults were foreseeable. A good example of the latter is *Hallett v. McDowell & Sons*, 186 Kan. 813, 352 P. 2d 946, wherein compensation was awarded a foreman injured by a dissatisfied workman upon a finding that the employer previously knew its foreman would be in imminent danger if the two continued to work together. The *Peavy* rule was also stated in *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P. 2d 553, in which a traveling salesman sustained an eye injury when the windshield of the auto which he was driving was shattered by a missile thrown from another car. However, the actual holding denying compensation was as follows:

"Under the workmen's compensation act an employee cannot recover for injuries intentionally inflicted upon him by a third person in no way connected with the employment and entirely outside the employer's authority, unless there is some circumstance that, by reason of his employment, makes the employee peculiarly and especially subject to assault." (Syl. ¶ 1.)

In line with the foregoing, compensation has always been allowable to one whose employment invites assault with intent to rob and who is injured by such an assault (*Phillips v. Kansas City, L. & W. Rly. Co.*, 126 Kan. 133, 267 Pac. 4; see also, *Siebert v. Hoch*, supra).

Although not directly pertinent here, other statements of the *Peavy* rule could be cited, the most recent being in *Carter v. Alpha Kappa Lambda Fraternity*, 197 Kan. 374, 417 P. 2d 137, in which we quoted from *Hallett v. McDowell & Sons*, supra, this comment on several Kansas cases:

" 'Suffice it to say running through all of them is the rule that if an employee is assaulted by a fellow workman, whether in anger or in play, an injury so sustained does not arise "out of the employment" and the employee is not entitled to compensation unless the employer had reason to anticipate that injury would result if the two continued to work together.' (p. 817.)" (p. 376.)

Claimant asks us to reappraise our holdings in work-connected assaults where compensation has been denied because of lack of

foreseeability on the part of the employer. He urges foreseeability should not be requisite to recovery.

In 1 Larson's Workmen's Compensation Law, we find the following discussion:

### "§ 11. ASSAULTS

"§ 11.00  Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work. A few jurisdictions deny compensation if the claimant himself was the aggressor; most reject this defense if the employment in fact caused the fight to break out. An increasing number accept the idea that the strain of enforced close contact may in itself provide the necessary work connection. Assaults for private reasons do not arise out of the employment unless, by facilitating an assault which would not otherwise be made, the employment becomes a contributing factor. Assaults by lunatics, drunks, and children have generally been found to arise out of the employment. . . .

"§ 11.11 (*a*) Dangerous duties

"Since every jurisdiction now accepts, at the minimum the principle that a harm is compensable if its risk is increased by the employment, the clearest ground of compensability in the assault category is a showing that the probability of assault was augmented either because of the particular character of claimant's job or because of the special liability to assault associated with the environment in which he must work.

"Among the particular jobs that have, for self-evident reasons, been held to subject an employee to a special risk of assault are those jobs that have to do with keeping the peace or guarding property, such as those of policemen, deputy sheriffs, and marshals, and, to the extent that they have as one of their duties the protection of the premises and the settling of disputes, also superintendents, foremen. . . .

"§ 11.11 (*d*)  Employer's knowledge of risk

"If the nature or setting of the job increases the risk of assault, it should not be material whether the employer knew of this increased risk or had reason to anticipate it. Foreseeability, as was stressed early in this chapter, is entirely out of place in a nonfault system of liability. Yet in New Jersey and Kansas, it has been insisted that the employer's knowledge of the hazardous character of the neighborhood or of the likelihood of assault be shown. These holdings are out of line not only with the rule on assaults in other jurisdictions, but also with these states' own interpretation of the 'arising' phrase in other categories of injury.

"§ 11.12   Subject matter of assault as causal link

"Apart from any environment risk, causal connection with the employment may be shown by connecting with the employment the subject matter of the dispute leading to the assault.

"A familiar illustration is that of the supervisor who is assaulted by a workman whom he has had fired or otherwise made to feel the weight of his authority, and the employee who is assaulted by his foreman or supervisor.

"Similarly, it is universally agreed that if the assault grew out of an argu-

ment over the performance of the work, the possession of the tools or equipment used in the work, and the like, the assault is compensable. . . .

"§ 11.21 Private quarrels imported from outside employment

"When the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test. . . .'"

Apparently New Jersey has now abandoned its previous position on foreseeability stated above by Larson (see *Martin v. J. Lichtman & Sons*, 42 N. J. 81, 199 A. 2d 241 [1964]). In his brief claimant cites cases from virtually all of the other states generally supporting the proposition that foreseeability on the part of the employer is not a prerequisite for allowance of workmen's compensation for a work-connected assault or injury.

This court has not always considered foreseeability essential to allowance of workmen's compensation for injury arising from a work-connected incident. For example, in *Cox v. Refining Co.*, 108 Kan. 320, 195 Pac. 863, we find this:

"But in order to charge the industry with compensation for the workman's injury, such injury must in some sense, in some degree, be due to the workman's employment in the industry.

"In discussing the phrase 'out of the employment,' in McNichol's Case, Mass. 497, 499, L. R. A. 1916 A, 306, 307, it was said:

" 'It "arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . . But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. *It need not have been foreseen or expected*, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " (Emphasis supplied.) (p. 323.)

Upon numerous occasions this court has considered the phrase "out of" the employment (5 Hatcher's Kansas Digest, rev. ed., Workmen's Compensation, §§ 21-22; 9C West's Digest, Workmen's Compensation, §§ 604-613) and has consistently stated it points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment; that an injury arises "out of" the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal

connection between the conditions under which the work is required to be performed and the resulting injury; that an injury arises "out of" the employment if it arises out of the nature, conditions, obligations and incidents of the employment (*Siebert v. Hoch,* supra, Syl. ¶¶ 3, 4).

These principles do not require the element of foreseeability and are consistent with the general rule found in 99 C. J. S., Workmen's Compensation, § 211, as follows:

"An accident or injury may arise out of the employment although it was not anticipated or foreseen; it is sufficient if, after the event, the accident or injury is seen to have had its origin in the employment."

Hence we see that in all of our cases foreseeability, with the exceptions noted, has never been a factor limiting the right to compensation, although it has been permitted to enlarge the right to compensation upon a determination that horseplay or sportive acts have become incident to employment. Machinery may give way due to a wholly latent defect and injure a workman. It could scarcely be supposed compensation would be denied because injury from the particular defect was not foreseeable by the employer. "Foreseeability" is, after all, a term used in the law of negligence in determining responsibility for an act of fault; it has been referred to as the fundamental basis of the law of negligence. Yet negligence or culpability is no part of the basis of the employer's liability to pay workmen's compensation. So it would seem "foreseeability" should be irrelevant as a limiting factor in determining liability for workmen's compensation which is based on work connection (see 1 Larson's Workmen's Compensation Law, § 6.50) and we discern no logical reason for requiring it in a work-connected injury. In *Stark v. Wilson,* 114 Kan. 459, 219 Pac. 507, the action was one to recover workmen's compensation for the death of a street railway conductor. The whole story of the death was that while standing on the rear platform of a car the conductor was stabbed by a passenger. After discussing applicable general principles this court, speaking through the late Justice Rousseau A. Burch, stated:

"He [a car conductor] is likewise subject to assault by persons in a state of intoxication, by brawlers, and by persons with mental twist or unbalance inclining them to antagonism and violence. A person belonging to one of these classes may go about the streets and mingle in crowds without displaying his proclivities, because there is nothing to focus attention on any specific individual. The street-car conductor is encountered, however, as one having authority and one with whom the passenger must deal. Whatever contrariety

and malignity of disposition the passenger may have is thus aroused and centered, and it may be said generally a street-car conductor on duty in a populous city is exposed to peculiar danger from criminal assault because of the fact he is a street-car conductor. While fatalities from this source of injury may be infrequent, the risk inheres in the employment. *In this instance the conductor was without fault, and so the assault must have been the result of innate malevolence, provoked by the fact, not that he was Orville Stark, but that he was conductor of the car.* Therefore, the court holds the workman lost his life through personal injury by accident arising out of his employment, within the meaning of the workmen's compensation act." (Emphasis supplied.) (pp. 462-463.)

Returning to the case at bar, claimant was the supervisory authority over the assailant Coltharp. A part of claimant's duties was to see that Coltharp performed the job for which he was hired and to take all reasonable measures toward that end. When Coltharp failed to perform his assigned task claimant asserted authority in accord with his duty to respondent. In the matter of payment to Coltharp he continued properly to exert that authority. Throughout the entire episode claimant was acting in the dispatch of respondent's business. Unlike the workman in *Romerez* he did not depart from his employment. The result—he was shot.

Private animosity imported from outside the employment seems not to have entered into the affair. The chairman of the greens committee was by chance a witness to both the morning conversation between claimant and Coltharp, which led up to the demand for the pay check, and to the shooting in the afternoon. In his testimony he characterized the affray: "It was really nothing personal, just line of duty of the club, and he was just mentally off is all I can say, the kid was, and he came back there with that intention . . . there was no personal deal between he and Brannum, it was just Brannum was to oversee him. I think anybody that told him what to do, he would have done the same thing." This appears to be a valid assessment, pointing up the fact it was claimant's work position which made him the target of Coltharp's ire.

At the time of the shooting claimant unquestionably bore a far greater risk of injury from assault by Coltharp than that incurred by any member of the public in general who might have been on the scene. In directing Coltharp as to his work and payment of wages claimant, in principle, was safeguarding his employer's interests as much as he would have been in overseeing its money or property and we see no valid reason to make a distinction where

injury arose as a result. Paraphrasing the language used by Justice Burch in *Stark v. Wilson,* supra: In this instance the superintendent was without fault, and so the assault must have been the result of innate malevolence, provoked by the fact, not that he was Clarence D. Brannum, but that he was the club superintendent.

We now believe the better reasoned rule applicable to this case to be: Where a supervisor is, without cause, assaulted by a subordinate employee who is disgruntled over conditions of work imposed upon him by the supervisor in the discharge of his duties, the injury to the supervisor arises out of his employment within the meaning of the workmen's compensation act, and we so hold. Accordingly, abandoning that which we have referred to as the *Peavy* rule, we overrule the holdings in *Peavy v. Contracting Co., Addington v. Hall,* and *Johnson v. Guggenheim Packing Co.,* omnia supra, insofar as the latter decision may be construed to rely on the *Peavy* rule.

We hold the trial court erred as a matter of law in determining claimant's injury did not arise out of his employment. Its judgment is reversed and this cause is remanded to the trial court with directions to determine from the transcript the remaining disputed issues and to render judgment accordingly.

APPROVED BY THE COURT.

PRICE, C. J., dissenting:

For many years the law of this state has been that injuries sustained by an employee as a result of an assault upon him by a fellow employee are not compensable under the workmen's compensation act unless it affirmatively appears from the record that the employer had reason to anticipate injury would result if the two employees continued to work together (*Johnson v. Guggenheim Packing Co.,* 168 Kan. 702, 215 P. 2d 178; *Hallett v. McDowell & Sons,* 186 Kan. 813, 817, 352 P. 2d 949).

When a specific rule of law has become well settled in this state I am not concerned with what the law on the point is in other jurisdictions, and neither am I convinced that it ought to be abandoned merely because it now appears that the reasons given for its original adoption do not seem altogether satisfactory. Under the facts of this particular case application of the rule may seem harsh. Over the years, however, the legislature has not seen fit to modify it. A pointed illustration of legislative action to curb the recent trend of

decisions by this court in "heart attack" cases is found in the 1967 enactment of the last sentence in the "obligation" found at K. S. A. 1968 Supp. 44-501.

Workmen's compensation examiners, the director, and district courts should be able to feel secure in the adjudication of controversies in reliance on past decisions of this court. The fundamental basis of the doctrine of *stare decisis* is that for the sake of certainty, stability and consistency in the law a conclusion reached in one case should be applied to succeeding cases if the facts and questions are substantially the same—to the end that those who are bound by it may rely upon it with the assurance that what was said yesterday will hold good tomorrow.

I therefore respectfully dissent.