No. 50,001

Iva J. Hensley, Widow of Elmer Wallace Hensley, Deceased, *Appellee,* v. Carl Graham Glass, a division of Sherwin-Williams, and Liberty Mutual Insurance Company, *Appellants.*

(597 P.2d 641)

Opinion filed July 14, 1979.

*Douglas D. Johnson,* of Kassebaum & Johnson, of Wichita, argued the cause and was on the brief for appellants.

*George E. McCullough,* of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Holmes, J.: This is a workmen's compensation appeal from a Sedgwick County district court judgment affirming an order of the workmen's compensation director which allowed death benefits to the claimant-appellee. The original appeal was dismissed by the Court of Appeals and we granted a petition for review.

On August 11, 1976, Elmer Wallace Hensley was employed by Carl Graham Glass. On this day, Mr. Hensley and other employees were installing glass around air conditioners on the roof of a parking garage adjacent to Page Court in downtown Wichita, Kansas. Shortly before 3:00 p.m. a sniper, subsequently identified as Michael Soles, began firing rifle shots from a balcony on the 26th floor of the nearby Holiday Inn. Ten individuals at various locations in the immediate area were killed or wounded. Mr. Hensley was struck and killed by the sniper fire while working on the nearby roof. There was no connection between the sniper and any of his victims.

Iva J. Hensley, claimant-appellee, is the widow of the deceased. On October 12, 1977, claimant was awarded workmen's

compensation benefits by an examiner. The director on review and the district court affirmed this award. The one substantive issue in the lower courts and in this Court, on appeal, is whether the injury to claimant's decedent *arose out of* his employment as required by K.S.A. 1978 Supp. 44-501, which provides in part:

"If in any employment to which the workmen's compensation act applies, personal injury by accident arising out of and in the course of employment is caused to a workman, his or her employer shall be liable to pay compensation to the workman in accordance with the provisions of the workmen's compensation act."

Before addressing the merits of the appeal, we must first consider the dismissal by the Court of Appeals. *Hensley v. Carl Graham Glass,* 3 Kan. App. 2d 57 (1979). The judgment of the district court was rendered February 21, 1978, although the journal entry was not filed until March 20, 1978. Appellants filed their notice of appeal on April 6, 1978. The appeal was dismissed for lack of jurisdiction on the grounds it was not timely filed within twenty days of the order of the district court as required by K.S.A. 1978 Supp. 44-556. In its opinion the court stated:

"It has long been the rule in this state that where an appeal from the district court in a workmen's compensation case is not taken and perfected within 20 days, appellate courts have no jurisdiction to consider it and the appeal must be dismissed. *The time in which such an appeal may be taken begins to run from the day the judgment is rendered, not from the date on which the journal entry of judgment is filed. Brower v. Sedgwick County Comm'rs,* 142 Kan. 7, Syl. ¶ 1 and ¶ 2, 45 P.2d 835 (1935)." 3 Kan. App. 2d at 58.

The 1979 session of the Legislature amended K.S.A. 1978 Supp. 44-556(c), effective April 24, 1979, to read:

"(c) Any party to the proceedings may appeal from any findings or order of the district court to the appellate courts on questions of law. The compensation payable under the decision of the district court shall not be stayed pending such appeal. Such appeal shall be taken and perfected by the filing of a written notice of appeal with the clerk of the district court within thirty (30) days after the filing of the entry of judgment as provided in K.S.A. 60-258 and amendments thereto. Any appeal heretofore taken and pending on the effective date of this act which was filed within twenty (20) days from the date of journal entry of judgment shall be deemed timely and the appellate court in which the appeal is pending shall have jurisdiction to determine such appeal. Appeals pursuant to this subsection shall be prosecuted in like manner as other appeals in civil cases, and shall take precedence over other cases except cases of a like character." L. 1979, ch. 158, § 1.

The purpose of the amendment was to conform the time for appeal in workmen's compensation cases to that in other civil

actions under K.S.A. 60-258 and 60-2103. The amendment specifically provides that it shall apply to any workmen's compensation case "pending on the effective date of this act." The decision of the Court of Appeals dismissing the appeal in this case is reversed.

Having determined that this court has jurisdiction, we turn to the merits of the appeal. The sole issue is whether claimant's decedent's injury and resulting death "arose out of" his employment. It is well-settled that "arising out of" and "in the course of" represent two separate requirements which must be satisfied before compensation is allowed. 1 Larson, *Workmen's Compensation Law* § 6.10 (1978). This court recognized this dichotomy in *Siebert v. Hoch,* 199 Kan. 299, 428 P.2d 825 (1967):

> "Our workmen's compensation act (K.S.A. 44-501) provides that in order to be compensable an accidental injury must arise 'out of' and 'in the course of' the employment. The two phrases have separate and distinct meanings (*Floro v. Ticehurst,* 147 Kan. 426, 76 P.2d 773, *Bailey v. Mosby Hotel Co.,* 160 Kan. 258, 160 P.2d 701); they are conjunctive and each condition must exist before compensation is allowable (*Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P.2d 197, *Tompkins v. Rinner Construction Co.,* 194 Kan. 278, 398 P.2d 578); and as to them every case must be determined upon its own facts." p. 303.

There is no question but that Hensley's death occurred during the course of his employment and neither party makes any argument to the contrary.

At the outset we pause to note the oft-stated general rule that the workmen's compensation act is to be liberally construed in favor of the workman and compensation is to be awarded where it is reasonably possible to do so. *Odell v. Unified School District,* 206 Kan. 752, 481 P.2d 974 (1971).

There are three general categories of risks in workmen's compensation cases: (1) those distinctly associated with the job; (2) risks which are personal to the workman; and (3) the so-called neutral risks which have no particular employment or personal character. The chance of being struck by sniper fire is not an ordinary risk associated with glass installers nor was the shooting of Hensley motivated by any personal connection with the sniper. The sniper's assault on Hensley falls into the category of neutral risks. See 1 Larson, *Workmen's Compensation Law,* § 7 (1978).

In Kansas there have been several workmen's compensation assault cases beginning with *Stark v. Wilson, Receiver,* 114 Kan. 459, 219 Pac. 507 (1923). In *Stark* a death by stabbing of a

street-car conductor was held compensable. The court based its award upon the theory that robbery is a hazard incident to employment that requires the employee to possess money.

This same analysis was followed in *Phillips v. Kansas City, L. & W. Rly. Co.*, 126 Kan. 133, 267 Pac. 4 (1928), where the deceased was bludgeoned to death while selling tickets for the railroad. Again, the job entailed handling money thereby inviting a robbery.

In *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P.2d 553 (1933), a traveling salesman, while in the course of his employment, received eye injuries from a chunk of mud intentionally thrown through his windshield. The court denied compensation because such an injury had no causal connection to the employment. Appellants rely heavily on *Covert* wherein the Court stated:

" 'Arising out of' means that the accident came out of the employment and makes it a condition precedent to the right to recover compensation that the occurrence shall have resulted from the risk reasonably incident to the employment and that there be a causal connection. While not ordinarily essential that it be peculiar to the particular employment in which the workman was engaged at the time of the injury, it must arise out of a risk in some way peculiar to that in which he was engaged and not out of a hazard to which he would be equally exposed outside of the business. Claimant's injury might have been sustained while traveling for his own pleasure as well as while he was in defendant's employment. The employment in no way provoked or invited the attack. Apparently the occupants of the car would have thrown the mud whether or not claimant had been employed by defendant." 138 Kan. at 593.

In other traveling salesmen or truck driver cases where the injury was *accidental,* rather than intentional, this court has allowed compensation. *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 285 Pac. 536 (1930); *Wetlaufer v. Howse*, 146 Kan. 500, 71 P.2d 879 (1937); *Stapleton v. State Highway Comm.*, 147 Kan. 419, 76 P.2d 843 (1938). Claimant cites these cases as indicative of a more liberal "arising out of" standard than applied in *Covert.*

Next in the line of assault cases is *Siebert v. Hoch*, 199 Kan. 299, 428 P.2d 825 (1967), in which a milkman was shot and killed while asleep in his employer's office at night. Although the milkman was in charge of collecting money, there was no evidence of a burglary.

"Viewed as a totally unexplained assault appellees still may not prevail in the light of the rules already stated. Once the burglary theory is eliminated, the record

contains no showing the employment brought the workman in contact with the risk that in fact caused his death or that it increased that risk—as was the situation in *Stark v. Wilson, Receiver,* 114 Kan. 459, 219 Pac. 507, and in *Phillips*—or of any connection at all between the employment and the death." p. 307.

Finally, the case of *Craig v. Electrolux Corporation,* 212 Kan. 75, 510 P.2d 138 (1973), is one in which a salesman whose job required handling money was shot and killed while waiting in a car for a co-worker. The court allowed compensation.

"The case at bar is distinguishable from *Siebert* in that one of the assailants saw Craig with a large sum of money and planned to rob him. One of Craig's duties was to make collections and carry substantial sums of money with him. Although no actual robbery occurred there was an intent to rob. No showing of personal animosity existed toward Craig as in *Siebert,* and under the circumstances a conclusion that robbery was intended is justified. The intent to rob, coupled with the fact Craig was required to carry substantial monies, creates the causal connection between the murder and the employment." p. 79.

In the case now before the Court the workmen's compensation examiner stated:

"In applying the above tests to the case at bar, the Examiner finds that the hazardous circumstances which created a causal connection between the employment and the injury were the requirement that the Claimant's decedent be present upon the roof and perform his duties there. It appears clear from the evidence that the decedent would not have been exposed in any way to the gunfire had that not been the case. The evidence clearly showed that he was working on another project immediately prior to the assault in an area where he could not have been struck by the fire. The evidence also rather clearly indicates that Mr. Hensley, when he was a member of the public at large, would not have been in the downtown area if his life had depended on it. While the Respondent earnestly contends, and rightly so, that many other members of the public at large were also victims of this mindless assault, that fact is entirely irrelevant to the issues in this case. The fact that other workers or other members of the public were injured or killed is not the test. The test is applied to the employment of the individual workman on a case-by-case basis. In this case, it is clear that this individual workman would not have been killed or injured had it not been for the hazards created by his employment. See *Faulkner v. Yellow Transit Freight Lines, supra,* for a case where the worker was killed and other members of the public at large or other employees were also swept away by the elements."

The examiner relied upon the "act of God" case of *Faulkner v. Yellow Transit Freight Lines,* 187 Kan. 667, 359 P.2d 833 (1961), in which a truck driver was killed at a gasoline station when it was struck by a tornado. The driver, having been involved in a minor accident, contacted his supervisor who ordered him to remain at the station until someone from the driver's company could get there. In *Faulkner* we held:

Syl. ¶ 2. "When the injury occurs from the elements, such as a tornado, or the like, the rule is that in order for it to be said the injury arose out of the employment, and thus compensable, it is essential there be a showing that the employment in some specific way can be said to have increased the workman's hazard to the element—that is, there must be a showing of some causal connection between the employment and the injury caused by the element, and that his situation was more hazardous because of his employment than it would have been otherwise."

Syl. ¶ 3. "In the course of his employment as a truck driver a workman received injuries from which he later died, when a gasoline filling station, in which he was at the time, was demolished by a tornado. The record is examined and it is *held:* Under all of the facts and circumstances, fully set forth in the opinion, the workman's employment subjected him to a greater hazard than his situation would have been otherwise; there was a causal connection between his employment and the injuries sustained in the tornado; such accidental injuries arose out of his employment, and death benefits to his dependents were properly awarded."

In the present case the director on review did not rely on *Faulkner* but based his holding solely on the assault cases. He stated:

"From the above cases one can see the line of reasoning used by the Court in deciding whether an assault can be considered as arising 'out of' employment. The pivotal question to be answered is whether the employment caused the employee to be exposed to an added risk or hazard to some degree greater than if not in his employment. Respondent argues this line of reasoning and concludes that the decedent herein was not exposed to any greater risk than the some fifteen (15) other persons who were injured by the sniper. The Director does not agree with respondent's conclusion.

"The decedent and his co-worker were on the roof of the parking garage at Page Court immediately adjacent to the Holiday Inn Plaza, from which the shots were fired. Decedent's co-worker, Arnold Merritt, testified that he and the decedent were working together and had just completed their work. They were picking up their tools when they heard the first shot. They heard another shot and then a third. The fourth shot struck the roof where they were working. Apparently the decedent was killed by the fifth shot and Mr. Merritt struck by the sixth. According to the testimony of Mr. Jerry Bullins, a lieutenant with the Wichita Police Department, the sniper fired from 30 to forty shots over a span of eleven (11) to fifteen (15) minutes.

"It appears to the Director that, since the decedent and his co-employee became the targets with the fourth shot fired, their position on the roof of the building made them prime targets for the sniper. There is no testimony in the record to show whether anyone was struck by the first three bullets, however, the fourth struck the place where these men were working. The fact that these workmen were on top of the parking garage adjacent to the sniper's location made them easier targets which greatly increased the risk of them being a target.

"The fact that at least three of the first six shots were fired at decedent and his co-worker clearly shows that they were prime targets, because of their physical location. Had they been on the street level, walking or driving, as was the general public they might not have been targets. In that situation they might have been on equal footing with the general public, however, since they were in an elevated position making them closer to the sniper, their risk of being shot was substantially increased."

The trial court affirmed and adopted as its judgment the order of the director. Considering, as we must, that the workmen's compensation law is to be liberally construed in favor of the workman we find no error in the trial court's determination.

The order of the Court of Appeals dismissing the original appeal is reversed and the judgment of the trial court is affirmed.

SCHROEDER, C.J., and McFARLAND, J., dissenting.