No. 99,913

JAMES BRYANT, *Appellee*, v. MIDWEST STAFF SOLUTIONS, INC., and LUMBERMAN'S UNDERWRITING ALLIANCE, *Appellants*.

(257 P.3d 255)

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 13, 2009. Opinion filed July 29, 2011.

*J. Scott Gordon*, of Long, Luder & Gordon, P.A., of Overland Park, argued the cause, and *Kimberlee K. Conard*, of the same firm, was with him on the briefs for appellants.

*John J. Bryan*, of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: On review of an unpublished opinion by the Court of Appeals, *Bryant v. Midwest Staff Solutions, Inc.*, No. 99,913, filed March 13, 2009, claimant James Bryant asks this court to affirm the administrative finding that he was entitled to workers compensation benefits and to reverse the Court of Appeals finding that his injuries were the result of normal activities of daily living and therefore noncompensable.

James Bryant is now approximately 38 years old. In August 1997, he suffered a back injury while jumping from a boat onto a dock. He had a lumbar spine diskectomy on October 15, 1998. While the surgery helped, he experienced ongoing lower-back pain, for which different treatments were prescribed.

Bryant began working as a service technician for Shawnee Heating and Cooling/Midwest Staff Solutions through respondent Axiom HR Solutions, Inc., in 2001. While working there, he missed a number of days of work due to persistent back pain.

On March 2, 2003, Bryant was working on a service call. He stooped over to grab a tool out of his tool bag, and when he twisted back to work on the equipment, he felt a "pop" or a "snap." He experienced a sudden, severe increase of pain in his lower back. The symptoms became significantly worse the following day.

He nevertheless returned to work, but on May 13, 2003, while he was working on an air conditioner installation, he stooped down or tried to lean over to carry out some welding and felt an explosive increase in pain. He then consulted various medical doctors, who eventually recommended surgery to carry out a multi-level fusion. The surgery was performed on September 23, 2003. Following about 6 months of progressive physical therapy, he was discharged from further care in the spring of 2004. He returned to work as a dispatcher in March 2004, but his wages were lowered from $22 to $20 per hour, and his working hours were also reduced.

Bryant voluntarily resigned from his job as a dispatcher in November 2005, having accepted other employment that promised him more hours, advancement, and specialized training in distribution. He subsequently voluntarily resigned from that job because the promised opportunities did not materialize.

On May 19, 2003, Bryant filed an application for a hearing with the Division of Workers Compensation. The administrative law judge (ALJ) found that Bryant was injured in the course of his employment and entered an award totaling $65,966.40. On review, the Kansas Workers Compensation Board (Board) issued an order affirming the finding of entitlement to compensation and modifying the compensation to a total award of $68,882.40. One Board member dissented, disagreeing with the manner in which insur-

ance benefits were included in the postinjury wage calculations. Midwest took a timely appeal to the Kansas Court of Appeals.

The Court of Appeals reversed the ALJ and the Board, finding that Bryant was precluded from compensation because his injuries were the result of the "normal activities of daily living." *Bryant*, slip op. at 14. The Court of Appeals did not address Midwest's other issues. This court granted Bryant's petition for review.

The Court of Appeals concluded that the record did not contain substantial competent evidence to support the Board's finding that Bryant suffered an injury under K.S.A. 2009 Supp. 44-508(e), because the acts of "stooping" and "leaning" were normal activities of daily living. Slip op. at 14.

*Standard of Review*

Whether an injury is compensable is a question over which an appellate court exercises unlimited review. *Coleman v. Swift-Eckrich*, 281 Kan. 381, 383, 130 P.3d 111 (2006).

When issues of statutory interpretation arise, the appellate court is presented with a question of law over which it has unlimited review. *Pruter v. Larned State Hospital*, 271 Kan. 865, 868, 26 P.3d 666 (2001). This court exercises unlimited review over questions involving the interpretation or construction of a statute and owes "no significant deference" to the ALJ's or the Board's interpretation or construction. *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 361, 204 P.3d 1156 (2009).

An appellate court's review of questions of fact in a workers compensation appeal is limited to whether, when reviewing the record as a whole, the Board's findings of fact are supported by substantial evidence, which is a question of law. K.S.A. 2010 Supp. 77-621(c)(7); *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514, 154 P.3d 494 (2007). In reviewing the evidence, the court does not reweigh the evidence or engage in de novo review. K.S.A. 2010 Supp. 77-621(d).

*Analysis*

As a preliminary matter, we note that during the 2010 legislative session the Kansas Legislature passed and the Governor signed into

law significant changes to the Kansas Workers Compensation Act. See Substitute for H.B. 2134, effective May 15, 2011. These changes included the addition of a requirement that an accident or cumulative trauma be the prevailing factor in causing a compensable injury, medical condition, or resulting impairment. The new law also introduces several exclusions from compensability, including "triggering or precipitating events" and "aggravations, accelerations, or exacerbations of a preexisting condition." The amended statute removes any reference to disabilities resulting from the "normal activities of day-to-day living," although it addresses situations when employment increases risks or hazards to which workers would not have been exposed "in normal non-employment life." Substitute for H.B. 2134, sec. 5.

Despite these modifications, the statutory scheme in place when Bryant was injured and filed his claim continues to control in this case.

As a general rule, a statute operates prospectively in the absence of clear statutory language that the legislature intended it to operate retroactively. *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 220, 73 P.3d 753 (2003). Even if the legislature expressly states that a statute will apply retroactively, vested or substantive rights are immune from retrospective statutory application. Substantive rights include rights of action "for injuries suffered in person." *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 667, 831 P.2d 958 (1992) (citing the Kansas Constitution Bill of Rights, § 18). The retroactive application of laws that adversely affect substantive rights violates a claimant's constitutional rights, because it constitutes a taking of property without due process of law. *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 190, 883 P.2d 1177 (1994).

Nothing in the language of the Substitute for H.B. 2134 suggests that the legislature intended that the sections relevant to the present case be applied retroactively. In fact, the legislature singled out one section, new K.S.A. 44-529(c), for retroactive application and was silent about the application of the remainder of the statutory amendments. In addition, Bryant has a vested right to seek com-

pensation for his injury, and retroactive application would violate due process.

We therefore analyze the issues in this case under the statutory scheme in place when Bryant incurred his injury.

The respondents made two arguments that Bryant's injury did not arise out of and in the course of his employment, as required for compensation under the Workers Compensation Act (Act). First, Bryant failed to prove that the events of March 2, 2003, and May 13, 2003, constituted injuries, because he already suffered from back pain and the work incidents did not change his condition—they simply intensified it. The second argument, which the Court of Appeals found controlling, was that any injury that Bryant sustained on the job was the result of the normal activities of day-to-day living.

The first contention, while argued at some length by the respondents, carries little force. The record contains credible testimony that the March 2, 2003, incident changed the physical structure of Bryant's body, causing damage or harm to it. Dr. Vito Carabetta, an independent medical examiner, testified that the incident was an instigating event that changed Bryant's relatively stable back condition, which was controlled by intermittent treatment, into a condition that required surgery. Dr. Theodore Sandow also testified that the work incidents were the triggering events that led Bryant to needing surgery in 2003. Both doctors opined that Bryant suffered a 25 percent permanent partial functional impairment, of which only 10 percent preexisted the injury. Furthermore, Bryant himself testified that his pain had been intermittent before March 2, 2003, but was continuous afterwards.

An accidental injury is compensable if it only aggravates or accelerates an existing disease or intensifies the condition. *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 377, 573 P.2d 1036 (1978); *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, 202, 547 P.2d 751 (1976). Legal authority and substantial evidence support the Board's conclusion that the work incidents were injuries.

The second argument revolves around whether the damage to his health that Bryant suffered was a consequence of the normal activities of day-to-day living.

K.S.A. 2010 Supp. 44-508(e) defines injuries:

" 'Personal injury' and 'injury' mean any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of the worker's usual labor. It is not essential that such lesion or change be of such character as to present external or visible signs of its existence. *An injury shall not be deemed to have been directly caused by the employment where it is shown that the employee suffers disability as a result of the natural aging process or by the normal activities of day-to-day living.*" (Emphasis added.)

The nonitalicized language is traceable at least as far back as the amendment to the workers compensation statute enacted in1974. L. 1974, ch. 203, sec. 7. The italicized language was added in 1993. L. 1993, ch. 286, sec. 28. Although no legislative history explains the addition of the new language, the language echoes doctrine found in the case law that had developed around the definition of injuries caused by employment.

The phrase "suffers disability . . . by the normal activities of day-to-day living" is susceptible to two subtly yet critically different interpretations. Under one interpretation, the injury is the result of day-to-day living—say, degeneration of a joint that occurs because of the ongoing strain that is placed on the joint both away from the job and on the job. Under the second interpretation, the injury is the result of the same *kind* of activity that may take place on the job as off the job—say, twisting the body to reach for an object. The syntax of the statute suggests that the former interpretation is correct, in that the wear of day-to-day living resembles the results of the natural aging process and is not like the stress of the worker's usual labor. Our courts have nevertheless at times followed an interpretation closer to the second way of reading the statutory language.

In *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P.2d 553 (1933), this court considered a claim by a traveling salesman who lost the use of an eye after someone threw a chunk of mud at the windshield of his car while he was on the road pursuant to his employment. This court found that, while "arising out of the employment" does not require that a claim results from an accident that is peculiar to the worker's particular employment, the injury

"must arise out of a risk in some way peculiar to that in which he was engaged and not out of a hazard to which he would be equally exposed outside of the business. Claimant's injury might have been sustained while traveling for his own pleasure as well as while he was in defendant's employment. The employment in no way provoked or invited the attack." *Covert*, 138 Kan. at 593.

The court invoked the doctrine of proximate cause to resolve the issue, finding that an intervening extraneous factor, not the claimant's employment, was the proximate cause of the injury. *Covert*, 138 Kan. at 593.

In *Taber v. Tole Landscape Co.*, 181 Kan. 616, 313 P.2d 290 (1957), the claimant suffered permanent injuries from heatstroke sustained after he worked on a hot day trimming trees and cleaning a yard. This court affirmed a finding that the injury arose out of the claimant's employment. The court held that the workers compensation statute does not apply to an injury

"which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. In other words, the causative danger must be peculiar to the work and not common to the neighborhood—that is, the employment must bring with it greater exposure to injurious results than the exposure to which persons generally in the locality are subjected." *Taber*, 181 Kan. at 620.

The court nevertheless rejected the employer's argument that the heat was a hazard faced by all residents of the community, whether they were working or engaged in any other activity that exposed them to the heat. The court noted that the employment subjected the claimant "to a greater hazard or risk than that to which he otherwise would have been exposed, and . . . the true test in a case such as this is whether the employment exposed the employee to the risk." *Taber*, 181 Kan. at 621.

In *Siebert v. Hoch*, 199 Kan. 299, 428 P.2d 825 (1967), a dairy deliveryman was murdered in his sleep on the premises of his employer. This court held that the death did not arise out of employment. The court noted that, in order to be compensable, an injury must both "arise out of" and "arise in the course of" employment. *Siebert*, 199 Kan. at 303. The two phrases have distinct meanings,

and each condition must exist before compensation is available. *Siebert*, 199 Kan. at 303. An injury arises out of employment when

"there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. [Citations omitted.]  .

"An injury arises 'out of' employment if it arises out of the nature, conditions, obligations and incidents of the employment. [Citations omitted.]" *Siebert*, 199 Kan. at 304.

In *Boeckmann v. Goodyear Tire & Rubber Co.*, 210 Kan. 733, 504 P.2d 625 (1972), this court considered a 54-year-old claimant who had a history of degenerative arthritis of the hips. As he stooped down to pull a tire off of a conveyor belt, he was immobilized by pain. The workers compensation examiner found that the claimant's hip joints had deteriorated to the point where he was unable to perform his job duties and that he was disabled because of the diseased hips and not because of the incident with the tire. The court agreed that the injuries did not arise out of the claimant's employment and concluded:

"Whatever the origin of Mr. Boeckmann's crippling arthritis may have been, it was not born of his employment. It existed before claimant entered upon his duties as an inspector of heavy tires, and it is safe to infer the degenerative process will continue to progress long after his retirement. . . .

"[A]ny movement would aggravate Boeckmann's painful condition and there was no difference between stoops and bends on the job or off.

"[T]he physical, commonplace, day to day activities of a person's employment, whatever they may be, as they continue to nibble and wear away the bones, joints and tissues which once were strong and sturdy in the early days of youth bring in their wake an endless succession of minute compensable accidents unrelated to time, place or circumstance. In our opinion this philosophy is not encompassed within the boundaries of the Workmen's Compensation Act . . . ." *Boeckmann*, 210 Kan. at 736, 739.

In *Hensley v. Carl Graham Glass*, 226 Kan. 256, 597 P.2d 641 (1979), this court considered a claim that followed the death of a worker who was shot by randomly targeted sniper fire while working on roof-top air conditioners next to a motel from which the sniper was firing. The court noted that there are three general categories of risks: those distinctly associated with the job; those that are personal to the worker; and those that are neutral in that

they have no particular employment or personal character. *Hensley*, 226 Kan. at 258. Even though 15 other people were injured by the sniper, this court found that the employment on the roof made the deceased worker a more accessible and obvious target and the injury therefore arose out of and in the course of his employment. *Hensley*, 226 Kan. at 261-62.

In *Martin v. U.S.D. No. 233*, 5 Kan. App. 2d 298, 615 P.2d 168 (1980), a custodian who had chronic lower-back problems was injured when he twisted his body to get out of his truck after arriving at the school parking lot. The court concluded that

"neither the claimant's vehicle nor the condition of the premises had anything to do with the injury. There were no intervening or contributing causes to the accident except for claimant's own actions in exiting from the truck. Considering the history of claimant's back problems, it is obvious that almost any everyday activity would have a tendency to aggravate his condition, *i.e.*, bending over to tie his shoes, getting up to adjust the television, or exiting from his own truck while on a vacation trip. This is a risk that is personal to the worker and not compensable." *Martin*, 5 Kan. App. 2d at 300.

In *Anderson v. Scarlett Auto Interiors*, 31 Kan. App. 2d 5, 61 P.3d 81 (2002), our appellate courts dealt for the first time with the new language of K.S.A. 44-508(e). A worker who routinely got in and out of cars in the course of modifying their interiors injured his back while climbing into a vehicle. The worker had a history of back pain and testified that his back condition could be aggravated by any activity that required him to bend over, stoop, or lift heavy items. The court affirmed the administrative finding for the claimant, concluding that the claimant's injury "followed not only from his personal degenerative conditions but from a hazard of his employment, *i.e.*, the requirement that he constantly enter and exit vehicles. . . . If [the claimant] had not been employed as he was, he would not have been equally exposed to the risk that ultimately caused his injury." *Anderson*, 31 Kan. App. 2d at 11.

In *Poff v. IBP, Inc.*, 33 Kan. App. 2d 700, 106 P.3d 1152 (2005), the Court of Appeals addressed, in part, the claim of a worker that his varicose veins were a compensable injury resulting from the great amount of time spent standing as part of his job. The employer argued that the varicose veins were a personal condition

resulting from the natural aging process and the normal activities of day-to-day living. The court agreed with the appeals board, finding that the legislature did not intend for the "normal activities of day-to-day living" to be so broadly defined as to include injuries caused or aggravated by the strain of physical exertion of work. *Poff*, 33 Kan. App. 2d at 709. The court concluded that, although standing and sitting are normal everyday activities, the lack of movement and the captive standing for prolonged periods of time were not normal everyday activities and were aggravating factors. *Poff*, 33 Kan. App. 2d at 710.

In *Johnson v. Johnson County*, 36 Kan. App. 2d 786, 147 P.3d 1091, *rev. denied* 281 Kan. 1378 (2006), the claimant, a child-care facilities inspector, injured her knee when she simultaneously turned in her chair and attempted to stand while reaching for an overhead file. The administrative law judge found:

" 'It is true that the claimant could have bent her knee in a similar fashion away from work, and thereby injured her knee away from work, but that did not happen here. This was a knee bend in furtherance of the employment—it was something the claimant did to accomplish her job—and it produced a locked up knee.' " *Johnson*, 36 Kan. App. 2d at 787.

The Court of Appeals disagreed, holding that the injury was the result of a degenerative condition that was aggravated by an activity that was not unique to the job. The court relied on the principle that an injury is compensable only if the employment exposes the worker to an increased risk of injury of the type actually sustained. *Johnson*, 36 Kan. App. 2d at 789.

In *Heller v. ConAgra Foods, Inc.*, No. 96,990, unpublished opinion by the Court of Appeals filed June 22, 2007, the claimant experienced escalating severe osteoarthritis in both knees during her employment on a meat processing production line. The Court of Appeals affirmed the administrative determination that the injuries arose out of the claimant's employment. The court rejected the employer's argument that K.S.A. 44-508(e) precluded compensation, because the claimant presented evidence showing that the particular conditions of her employment aggravated or accelerated her condition. The evidence consisted of medical testimony that the prolonged standing and walking on slippery concrete was an

important contributing factor that aggravated a preexisting condition.

In *Brazil v. Bank One Corp.*, No. 100,989, unpublished opinion by the Court of Appeals filed June 26, 2009, *rev. denied* 290 Kan. 1092 (2010), the claimant, a mortgage underwriter, had chronic back problems that grew worse if she sat for long periods of time. On one particular day she flew from Kansas City to Houston and then drove 2 hours to Beaumont, Texas. There she reviewed mortgage files, which required her to sit at a table, reach down for a file, scrutinize the file 15 to 30 or more minutes, shut the file, and reach for a new one. While engaging in this process, she felt a sharp pain go down her left leg, and by the end of the day the pain radiated down both legs. The ALJ found that the employment aggravated the underlying degenerative disease. The Board reversed, finding that the claimant had failed to show that her injury was caused by prolonged sitting or extensive twisting, bending, or sitting. The Court of Appeals affirmed the appeals board, finding that sitting, bending, or twisting were normal activities of day-to-day living and the injury was not compensable.

We cannot discern a consistent principle in these various opinions. Certainly, no bright-line rule emerges from analysis of these cases or from the plain language of the statute. To be sure, twisting or bending over are daily activities, for workers as well as nonworkers. So are lifting objects, cutting pieces of meat, typing on keyboards, and walking and standing for extended periods of time. The Court of Appeals' opinion in the present case tends to remove from the purview of workers compensation protection the many work-related ailments that follow from activities that may also be carried out away from the job.

Although no bright-line test for what constitutes a work-injury is possible, the proper approach is to focus on whether the injury occurred as a consequence of the broad spectrum of life's ongoing daily activities, such as chewing or breathing or walking in ways that were not peculiar to the job, or as a consequence of an event or continuing events specific to the requirements of performing one's job. "The right to compensation benefits depends on one simple test: Was there a work-connected injury? . . . [T]he test is

not the relation of an individual's personal quality (fault) to an event, but the relationship of an event to an employment." 1 Larson's Workers' Compensation Law § 1.03[1] (2011).

Even though no bright-line test for whether an injury arises out of employment is possible, the focus of inquiry should be on whether the activity that results in injury is connected to, or is inherent in, the performance of the job. The statutory scheme does not reduce the analysis to an isolated movement—bending, twisting, lifting, walking, or other body motions—but looks to the overall context of what the worker was doing—welding, reaching for tools, getting in or out of a vehicle, or engaging in other work-related activities.

This approach is consistent not only with the specific language of the statute in question but also with the general purpose of workers compensation laws:

"Workers' compensation acts are largely the outgrowth of modern industrial life. They give recognition to a broad social obligation, in furtherance of sound public policy. The public has come to realize that in many cases an injured employee engaged in a hazardous employment will be unable to establish actionable negligence on the part of the employer, but that it is unjust to deny relief to the employee on that account. For this and similar reasons, workers' compensation acts have shifted from the employee to the industry and indirectly to the general public certain burdens incidental to modern industrial operations." *Hormann v. New Hampshire Ins. Co.*, 236 Kan. 190, 192, 689 P.2d 837 (1984).

Bryant was not engaged in the normal activities of day-to-day living when he reached for his tool belt or when he bent down to carry out a welding task. We therefore reverse the Court of Appeals and hold that Bryant's injury was covered by the Kansas workers compensation statute.

The Court of Appeals did not address the other issues before it, which related to the calculation of wages. We accordingly remand this case to the Court of Appeals for the purpose of ruling on the other issues originally raised on appeal. We note that relevant case-law has developed between the time when the Court of Appeals decided this case and when this court heard the review.

The case is reversed and remanded to the Court of Appeals with directions.

ROBERT J. SCHMISSEUR, District Judge, assigned.