NOT DESIGNATED FOR PUBLICATION

No. 114,361

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

VICTORINA BUSTAMANTE,
*Appellant*,

v.

NATIONAL BEEF PACKING CO., and
AMERICAN ZURICH INS. CO.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed April 8, 2016. Affirmed.

*Conn Felix Sanchez*, of Kansas City, for appellant.

*D. Shane Bangerter* and *Aaron Kite*, of Rebein Bangerter PA, of Dodge City, for appellees.

Before MALONE, C.J., MCANANY and POWELL, JJ.

*Per Curiam*: Victorina Bustamante appeals from the Workers Compensation Appeals Board's (Board) decision in which the Board denied her claim for benefits because she failed to establish her low back condition arose out of and in the course of her employment. On appeal, Bustamante contends the Board improperly considered certain medical opinion evidence. Without such evidence, Bustamante asserts the Board's factual finding that her low back condition did not arise out of and in the course of her employment was not supported by substantial evidence when viewed in light of the record as a whole.

1

Bustamante was born in Mexico. She came to the United States in 2002. She cannot read, write, or speak English. An interpreter translated for her at the hearings, at her deposition, at her various medical examinations, and at her vocational evaluation.

In December 2008, Bustamante began working for National Beef Packing Co. (National Beef) at their packing plant in Dodge City. Her position as a bagger required that she continuously pack bags with 8 to 10 pounds of fajita meat and throw the bags onto a conveyor belt.

*The Accident*

The record contains conflicting evidence concerning the date of Bustamante's alleged injury. At the preliminary hearing on December 11, 2013, Bustamante testified the accident occurred on August 26, 2010. At her deposition on February 12, 2013, Bustamante testified the accident occurred in December 2010. She also testified that a second accident occurred in August 2011, where a coworker dropped a box of bags that hit her right hip and low back. At the regular hearing on November 5, 2014, Bustamante confirmed that the first accident occurred on August 26, 2010.

In any event, the circumstances of the Bustamante's accident are not disputed. Bustamante and a coworker were pushing gondola carts filled with beef products when one of the carts struck Bustamante in the low back. According to Bustamante, she had never experienced any back problems before this accident. The company nurse treated her with ice, Biofreeze, and I-Prin. She had no further immediate treatment. Bustamante continued to work full time after the accident and did not have any immediate work restrictions arising from this accident.

In September 2011, Bustamante sought the treatment of her personal physician, Dr. Aurora Arribas. Bustamante later testified that Dr. Arribas told her that her low back

2

pain was likely from arthritis. She said she began taking calcium and vitamin D supplements recommended by Dr. Arribas.

At the order of Dr. Arribas, Bustamante went on leave from National Beef on November 14, 2011. She continued taking the vitamin and mineral supplements, and Dr. Arribas eventually released her to full-time duty in September 2012. But Bustamante could not pass National Beef's hiring requirements and she was fired on October 11, 2012. She has remained unemployed since her termination.

*Dr. Murati*

At the request of Bustamante's attorney, Dr. Pedro Murati evaluated Bustamante on December 10, 2012, and again on March 19, 2014. On both dates, Bustamante complained of occasional numbness and tingling in her right foot, occasional sharp pain in her low back, and pain in her right leg originating in her low back. She said she could not sit, stand, lie down, or lift heavy items without increased low back pain.

Bustamante told Dr. Murati that she suffered two low back injuries before the current accident. She said she was treated by National Beef's nurse for both injuries, and the injuries resolved without further treatment. Dr. Murati found tenderness in her low back, especially on the right side. He also found three physical markers of radiculopathy.

Dr. Murati diagnosed Bustamante as having low back pain with signs of radiculopathy and right sacroiliac joint dysfunction. He concluded these conditions were more probably than not caused by the gondola cart accident.

3

*Dr. Hufford*

At the request of the administrative law judge (ALJ), on June 18, 2013, Dr. David Hufford reviewed Bustamante's medical records and conducted an independent medical examination of her. Bustamante complained to Dr. Hufford of low back pain radiating down her right leg to her ankle and the dorsum of her foot. She also complained of right knee pain, which was unrelated to the accident and for which she had seen Dr. Guerillmo Garcia.

Bustamante told Dr. Hufford the gondola cart accident occurred in January 2010. He did not recall her telling him about an accident on August 26, 2010. He described Bustamante as "a less than reliable historian."

Dr. Hufford opined that Bustamante's low back pain was caused by chronic degenerative lumbar spine disease and possibly osteopenia/osteoporosis. He concluded that Bustamante suffered a back contusion in the gondola cart accident, which resolved and was now asymptomatic. Further, the gondola cart accident did not accelerate any preexisting medical condition and any repetitive activities involved in Bustamante's work and did not aggravate her degenerative disc disease and facet arthropathy in the lumbar spine. He did not set any firm work restrictions based on the injury.

*Vocational Consultant*

Paul Hardin, a vocational consultant, interviewed Bustamante at the request of her attorney and completed a task performance capacity assessment based on the interview and a review of Dr. Murati's medical evaluation. Hardin concluded Bustamante suffered a 100% loss, rendering her "unable to obtain or perform substantial, gainful employment."

*ALJ's Decision*

On January 26, 2015, the ALJ found that Bustamante failed to prove by a preponderance of credible evidence that her low back condition resulted from her work-related accident and, therefore, denied her requested award of compensation. The ALJ concluded: "[Bustamante] did sustain a work injury of a back contusion which resolved. Her residual and continuing symptoms are of a personal nature."

*Board's Decision*

Bustamante sought review by the Board. She relied on Dr. Murati's conclusion that she had ongoing problems caused by the gondola cart accident. She claimed that Dr. Murati's findings were uncontroverted and should not have been disregarded absent a showing that they were improbable or untrustworthy. Bustamante argued that there was no evidence that her injury was a personal condition, as there was no evidence of any intervening accident or other possible source of her complaints. Finally, she contended the Board should not rely on Dr. Arribas' findings because Dr. Arribas did not testify.

The Board affirmed the ALJ's decision, finding that Bustamante suffered a work-related back contusion which resolved over time and any residual and continuing symptoms were of a personal nature. The Board gave more weight to the opinions of Dr. Hufford than to those of Dr. Murati because "Dr. Hufford's opinions [were] consistent with both [Bustamante]'s testimony that it was her understanding Dr. Arribas thought her low back problems were due to arthritis and Dr. Murati's acknowledgement of [Bustamante]'s history of prior low back injuries and documentation of degenerative lumber spine disease."

5

*Analysis*

Bustamante appealed to us. She makes two arguments: (1) the Board erred in relying on the medical reports of Drs. Hufford and Murati and the findings of Dr. Arribas; and (2) there was insufficient evidence to support the Board's decision.

In accordance with K.S.A. 2015 Supp. 44-556(a) we review the Board's decision under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601, *et seq.* See *Herrera-Gallegos v. H & H Delivery Service, Inc*., 42 Kan. App. 2d 360, 361-62, 212 P.3d 239 (2009). Bustamante had the burden of proving to the Board her right to compensation. See *Messner v. Continental Plastic Containers*, 48 Kan. App. 2d 731, 751, 298 P.3d 371, *rev. denied* 297 Kan. 1246 (2013). On appeal, the party claiming error has the burden to show error. K.S.A. 2015 Supp. 77-621(a)(1).

The only contested issue before us is whether Bustamante's low back condition arose out of her employment. This is a fact issue. See K.S.A. 2015 Supp. 77-621(c)(7); *Sumner v. Meier's Ready Mix, Inc.*, 282 Kan. 283, 293, 144 P.3d 668 (2006). In resolving this issue, we examine the Board's factual findings in light of the record as a whole to determine whether those findings are supported by substantial evidence. See K.S.A. 2015 Supp. 77-621(c)(7). Substantial evidence is "evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis of fact from which the issue raised could be easily resolved." *Redd v. Kansas Truck Center*, 291 Kan. 176, 183-84, 239 P.3d 66 (2010). In considering the record as a whole, we (1) review the evidence both supporting and contradicting the Board's findings, (2) examine any credibility determinations, and (3) review the Board's explanation as to why the evidence supports its findings. See K.S.A. 2015 Supp. 77-621(d); *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). We do not reweigh the evidence or engage in de novo review, except to "determine whether the evidence supporting the [Board]'s decision has been so undermined by cross-examination

6

or other evidence that it is insufficient to support the [Board]'s conclusion." *Herrera-Gallegos*, 42 Kan. App. 2d at 363.

■ *Dr. Hufford's Medical Opinion*

Bustamante claims Dr. Hufford's findings were based on the wrong legal standard and contradicted by his deposition testimony. She also claims the credibility of Dr. Hufford's opinion was undermined because he "guessed" the date of her injury.

On June 18, 2013, following the independent medical evaluation, Dr. Hufford submitted a report of his findings to the ALJ. The parties jointly requested that Dr. Hufford clarify his findings, asking Dr. Hufford to explain whether the gondola cart accident was a prevailing factor causing Bustamante's low back condition. The letter did not identify a date of accident.

At his deposition, Dr. Hufford clarified and explained his findings. The date of May 15, 2011, referred to in the questioning, is significant because that was when H.B. 2134, which referred to causation in a workers compensation case in terms of the "prevailing factor" causing an injury, became law. K.S.A. 2015 Supp. 44-508(f)(2)(B)(ii). Before that, the test was whether it was more probable than not that the accident caused the claimant's injury. K.S.A. 2010 Supp. 44-508(g). Dr. Hufford testified:

> "Q.    Now, apart from the prevailing factor would you believe it is more probable than not that her current back complaints are related to a work-related accident prior to May 15, 2011?
>
> "A.    No, I did not believe it was clear to me that her ongoing low back pain was exclusively and solely due to that one single work injury that was incurred. There were notations of her having back pain associated with urinary tract infection in the summer of 2010. . . . And it was not clear to me in the conduct of this examination that her back pain was because of a single work accident nor that I

believed that that work accident aggravated or accelerated any condition in her lumbar spine. I could not draw a linear—

"Q. From the joint letter which is Deposition Exhibit 4, does that provide you any guidance as to when the date of accident is?

"A. No, it doesn't indicate that that was that specific date. I am again referring to the fact that when I began the examination I believe I asked her what the injury was and that was what initiated my conversation and my analysis. But I don't think whether or not a date of accident named in there changes the overall nature and character of what my opinion is.

"Q. . . .[P]rior to May 15, 2011 if you had an accident and you aggravate your back, it is a compensable claim. Now, going to this case, you don't have or you just choose a date of accident; is that correct?

"A. No, I don't mean to imply that I am basing everything about my opinion solely and exclusively on one specific date of accident. . . . First of all, the joint letter talks about both her low back and her right knee. It does not give a date of accident for either condition. Her right knee complaints, although there is in the record notation of prior right knee pain, seemed to have been reported after *May 15, 2011 which obviously is a critical date for the prevailing factor law*.

"So as I tried to do my analysis, my recollection of doing this was that we were really dealing with two separate and possibly parallel situations. Number one, *her low back which preceded May 15, 2011* and a right knee which came after May 15, 2011. So to me there were two separate and distinct parts to this question and I tried to keep those somewhat separate in my way of thinking in my analysis. The bottom line is that, yes, she did have an injury to her low back that did occur in one specific acute tissue trauma. There is evidence that she has degenerative disc disease in her lumbar spine as noted in several places in the notes. It is true that we talk[ed] about aggravation of a degenerative condition and rendering it symptomatic in the fashion that was in place before May 15, 2011.

"If you are going to ask me whether or not her injury of December 29, 2009 contributed one iota to her back pain, my answer is, yes, it may possibly have. But I do not think that that is necessarily the primary factory as distinguished from the prevailing factor for her complaints of low back pain

8

which also have other potential causes including osteopenia of the lumber spine which is documented on scanning for osteoporosis." (Emphasis added.)

Bustamante contends that because of the statements in the last paragraph quoted above, Dr. Hufford's findings with regard to her low back condition were not supported by substantial evidence. She contends that Dr. Hufford incorrectly applied the prevailing factor test even though the gondola cart accident allegedly occurred before May 15, 2011.

But Bustamante's contention is not supported by a reasonable interpretation of Dr. Hufford's deposition testimony as set forth above. It is clear that Dr. Hufford was aware of the May 15, 2011, watershed in terms of determining causation. He understood that Bustamante's low back injury was before May 15, 2011, and he evaluated her case accordingly. Moreover, Dr. Hufford explained that he compensated for any lack of clarity about Bustamante's date of injury, stating he "tried to cover all of those contingencies in my report and analysis." At one point Dr. Hufford stated, "I do not think [the gondola cart accident was] necessarily the primary factory as distinguished from the prevailing factor for her complaints of low back pain." But this confusion of terms does not undermine the substance of his testimony when viewed as a whole that in evaluating Bustamante's case, he did so with the understanding her accident occurred before the new law became effective.

Bustamante also claims Dr. Hufford's findings are not supported by substantial evidence because he testified it was possible Bustamante's low back condition was a result of a work-related accident occurring on August 26, 2010. But this argument is unpersuasive given the circumstances. Bustamante told Dr. Hufford the gondola cart accident occurred in January 2010. She explained to him the accident and the manner of her injury. Dr. Hufford also noted the medical records provided to him indicated the gondola cart accident occurred on December 29, 2009. When Bustamante's counsel asked Dr. Hufford whether Bustamante's injury could have been a result of an accident

9

occurring on August 26, 2010, Dr. Hufford was under the impression the gondola cart accident did not occur on that date. The veracity of Dr. Hufford's opinion was not undermined by this response. Besides, both dates are before the statutory change on May 15, 2011.

Bustamante also claims Dr. Hufford's findings were undermined by him guessing the date of Bustamante's injury. This argument is not supported by the record. Dr. Hufford determined Bustamante's injury date was December 29, 2009, based on the records provided to him before Bustamante's independent medical evaluation.

■ *Evidentiary Error*

Bustamante claims the Board erred in relying on the medical findings of Dr. Arribas. She argues that any evidence of Dr. Arribas' findings should not have been considered by the Board because Dr. Arribas did not testify and his medical records were not admitted into evidence.

K.S.A. 44-519 provides in relevant part:

> "[N]o report of any examination of any employee by a health care provider, as provided
> for in the workers compensation act . . . shall be competent evidence in any proceeding
> for the determining or collection of compensation unless supported by the testimony of
> such health care provider, if this testimony is admissible, and shall not be competent
> evidence in any case where testimony of such health care provider is not admissible."

In *Boeing Military Airplane Co. v. Enloe*, 13 Kan. App. 2d 128, 130, 764 P.2d 462 (1988), *rev. denied* 244 Kan. 736 (1989), this court discussed whether a doctor may consult an absent, nontestifying doctor's medical records in rendering an opinion. The court held that the testifying doctor could refer to the medical records of a nontestifying

10

doctor for the purpose of forming the testifying doctor's medical opinion, and the testifying doctor's opinions so formed were competent evidence under K.S.A. 44-519.

The court explained: "K.S.A. 44-519 does not limit the information a testifying physician or surgeon may consider in rendering his or her opinion as to the condition of an injured employee." 13 Kan. App. 2d at 130. The statute "does not prevent a testifying physician from considering medical evidence generated by other absent physicians as long as the testifying physician is expressing his or her own opinion rather than the opinion of the absent physician." 13 Kan. App. 2d 128, Syl. ¶ 3.

In contrast, *Roberts v. J.C. Penney Co.*, 263 Kan. 270, 272, 949 P.2d 613 (1997), distinguishes a vocational expert who is not permitted to testify about opinions based, in part, on the medical records of a physician who did not testify and whose records were not introduced into evidence, from the circumstances in *Boeing* in which a testifying doctor was entitled to rely on the medical records of a nontestifying doctor in forming medical opinions.

Here, Dr. Hufford's medical opinions and recommendations were based on his physical examination of Bustamante, her medical history, and several medical reports of her treating physicians. Although his opinion relied, in part, on medical reports of Dr. Arribas, who did not testify and whose records were not admitted into evidence, Dr. Hufford's testimony expressed his own opinion and not that of Dr. Arribas. Dr. Hufford's medical opinion was competent evidence.

Besides, K.S.A. 44-519 does not prohibit the Board from considering Bustamante's own testimony concerning Dr. Arribas' treatment. At the regular hearing, Bustamante testified that she sought treatment from Dr. Arribas after the gondola cart accident. She recalled Dr. Arribas saying that her low back pain was likely due to

11

arthritis. She also testified she began taking calcium and vitamin D supplements at Dr. Arribas' direction.

In any event, it does not appear the Board relied on Dr. Arribas' medical reports in rendering its decision. The Board's decision was based on Dr. Hufford's opinion that Bustamante's low back pain was the result of chronic and degenerative lumbar spine disease and possibly osteopenia/osteoporosis. While the Board noted that Bustamante sought treatment from Dr. Arribas, it did not rely on evidence expressed in Dr. Arribas' medical reports in reaching its decision. Instead, the Board found Dr. Hufford's opinion more credible than that of Dr. Murati.

We are not persuaded by Bustamante's claims of evidentiary errors by the Board.

*Substantial Evidence*

Bustamante contends she met her burden of proving, by a preponderance of credible evidence, that she suffered a work-related injury that resulted in permanent impairment. As previously discussed, the pre-May 15, 2011, statutory scheme applied to Bustamante's injury. See *Bryant v. Midwest Staff Solution, Inc.*, 292 Kan. 585, 588-89, 257 P.3d 255 (2011).

National Beef concedes the gondola cart accident occurred in the course of her employment. The only remaining issue is whether Bustamante's low back condition arose out of her employment. "'An injury arises "out of" employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'" *Rinke v. Bank of America*, 282 Kan. 746, 752, 148 P.3d 553 (2006).

12

With respect to Bustamante's pre-May 15, 2011, back injury, it "is compensable if it only aggravates or accelerates an existing disease or intensifies the condition." *Bryant*, 292 Kan. at 589; see K.S.A. 2010 Supp. 44-501(c) ("The employee shall not be entitled to recover for the aggravation of a preexisting condition, except to the extent that the work-related injury causes increased disability."). "[T]he test is not whether the job-related activity or injury caused the condition but whether the job-related activity or injury aggravated or accelerated the condition." *Hanson v. Logan U.S.D. 326*, 28 Kan. App. 2d 92, 95, 11 P.3d 1184 (2000), *rev. denied* 270 Kan. 898 (2001).

First, Bustamante contends her low back condition was a direct result of the gondola cart accident. But the record contains credible testimony that Bustamante's low back condition was the result of chronic degenerative lumbar spine disease and possibly osteopenia/osteoporosis. Dr. Hufford opined that Bustamante suffered a low back contusion in the accident, which resolved and became asymptomatic after treatment. Dr. Hufford's opinion was supported, in part, by findings of Dr. Murati, who acknowledged that Bustamante's MRI showed degenerative lumbar spine disease. Furthermore, Bustamante continued to work at full capacity after the accident. Her first complaint of low back pain did not occur until 1 year after the alleged August 26, 2011, accident, which indicates the low back condition was likely caused by something other than the gondola cart accident.

Second, Bustamante claims the gondola cart accident aggravated a preexisting low back condition. Dr. Hufford specifically found the gondola cart accident did not aggravate Bustamante's low back condition. The Board found Dr. Hufford's testimony more persuasive than the contrary opinion of Dr. Murati. We do not reassess the credibility of the conflicting opinions expressed by Drs. Hufford and Murati. That was a matter for the Board.

13

Third, Bustamante claims her job duties of bending, twisting, and repetitive throwing of 8 to 10 pound bags of meat aggravated her preexisting low back condition. Dr. Murati discussed whether the gondola cart accident aggravated Bustamante's low back condition. But Dr. Hufford specifically found Bustamante did not aggravate a preexisting low back condition through a repetitive activity connected with her employment. The credibility of the competing doctors on this issue was a matter for the Board to resolve, not us.

The Board found that Bustamante failed to prove a causal connection between her low back condition and the gondola cart accident. Substantial evidence exists in the record, when viewed in light of the record as a whole, to support the Board's finding.

Affirmed.