No. 120,056

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARY L. JOHNSON,
*Appellee*,

v.

STORMONT VAIL HEALTHCARE INC.,
*Appellant*.

SYLLABUS BY THE COURT

1.

To receive a workers compensation award, the law places the burden on the worker to prove that the injury arises out of and in the course of the worker's employment.

2.

By law, an accident or injury which arose out of a neutral risk with no particular employment or personal character cannot arise out of and in the course of employment in order to be compensable under the Workers Compensation Act.

3.

The question of whether an accident arises out of and in the course of employment is a question of fact.

4.

Upon appellate review, determining whether the Board's findings of fact are supported by substantial competent evidence is a question of law.

1

5.

Words and phrases shall be construed according to the context and approved usage of the language, but technical words and phrases and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings.

6.

In deciding whether an injury arises out of employment, the focus of inquiry should be on whether the activity that results in injury is connected to, or is in, the performance of the job.

7.

Once the claimant has met the burden of proving a right to compensation, the employer may seek relief from liability based on any statutory defense or exception. The employer then has the burden of proof on any claimed defenses or exceptions.

Appeal from Workers Compensation Board. Opinion filed July 12, 2019. Affirmed.

*Kendra M. Oakes*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellant.

*Roger D. Fincher,* of Topeka, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and HILL, JJ.

HILL, J.:  Mary L. Johnson, a cleaning lady at Stormont Vail Hospital in Topeka, fell twice at work and was injured. She received workers compensation benefits after both the administrative law judge and the Workers Compensation Appeals Board ruled that she had proved her injuries arose out of and in the course of her employment even though she could not explain why she fell. Stormont Vail argues that since these were unexplained falls, they are neutral risks and any injuries arising from neutral risks are

noncompensable under the Workers Compensation Act. Because the Board made a factual finding that these falls had an employment character, that is, Johnson fell while walking, and walking was a major portion of her job, we hold the Board properly awarded Johnson workers compensation benefits. The Act only exempts from compensation injuries from neutral risks such as unexplained falls that have no employment character.

*Within a span of a few months, Johnson suffers two falls.*

Johnson worked at Stormont Vail Hospital in the Environmental Services Department as a housekeeper. Her duties included cleaning patients' rooms, bathrooms, waiting rooms, lobbies, and most other areas of the hospital. These duties also included changing sheets, making beds, carrying dirty linens to bins, removing trash, dusting, sweeping, and vacuuming.

In 2015, while she was walking down a basement hallway in the hospital on her way to clean the pavilion, her foot caught somehow and she fell. She later explained, "I was just walking down, down the hallway and I, I just trip—I fell." Johnson later stated, "I was just—just walking and next thing I knew I had—my foot caught like that, or something, and I just fell flat." She elaborated, "I know my foot stopped (indicating). It stopped, that's what made me trip." Johnson could not say definitively what made her fall—whether she slipped or if her foot caught on something sticky. Johnson noticed nothing on the floor that she could have tripped over or that was wet.

When she fell, she hit her left knee, skinned her arm, and got a floor burn on her right hand that became bruised. She also shattered her left kneecap. This injury forced her to go to a rehabilitative center for about four days, and then after her discharge she underwent physical therapy. Johnson was off work for three months.

About six months after returning to work, Johnson was again walking down the basement hallway when she fell just outside the housekeeping office. This time, she was carrying cleaning supplies. "All I saw was me and my supplies scattered all over the floor." She again denied slipping on anything, said the floors looked fine, but also noted that sometimes her shoes stuck to the floor.

From this fall, Johnson fractured her left wrist. Once again, she could not work for three months. When her doctor released her to return to work, she was told to wear a brace. But since Stormont Vail did not want her to work while wearing a brace, it placed her on extended leave for another month.

Like the first fall, why Johnson fell is unclear. Once again, Johnson acknowledged there was not anything obvious on the floor that caused her fall. She suggested it was possibly because of the hospital floors being sticky due to an improperly mixed cleaning chemical. After Johnson's second fall, her supervisor asked her what caused it. At his deposition, Johnson's supervisor could not recall Johnson's answer, but he thought she said that she was not sure. He checked the floor for wetness and found it was not wet, but he did not check for stickiness. At the time of both falls, Johnson was wearing closed-toed, rubber-soled shoes required by her employer. The floor in the basement is covered mainly with hard tile and rubber matting in some spots.

*Johnson seeks workers compensation benefits.*

In short, Johnson's respective injuries from her falls were a left patellar fracture and a left distal radius fracture. She received conservative treatment for both injuries. At her initial hearing, she reported occasional or continued symptoms such as a dull ache, decreased range of motion, and stiffness in her left knee. She reported throbbing, tenderness, decreased range of motion, numbness, and weakness in her left wrist.

4

The parties stipulated that Johnson suffered a work-related injury by traumatic accident on both dates. Johnson argued that both accidents arose out of and in the course of her employment. Stormont Vail argued they did not. In its view, her falls resulted from a neutral risk with no particular employment or personal character and were therefore, not compensable. The administrative law judge found for Johnson on this point and awarded compensation for both falls.

Stormont Vail sought review of the award to the Workers Compensation Appeals Board, arguing that Johnson's injuries arose from neutral risks or idiopathic causes. In the hospital's view, Johnson's injuries did not arise out of and in the course of her employment and were thus not compensable.

Rejecting Stormont Vail's position, the Board adopted the ALJ's stipulations, which included the joint stipulation that Johnson suffered work-related injuries during her two falls. The Board found that Johnson's job required her to stand and walk the entire day. The Board did, however, reject the ALJ's speculation that Johnson was injured because of work fatigue or work distractions. The Board found that Johnson did not prove her falls were caused by her shoes sticking to any cleaning chemical residue on the floors.

To sum up, the Board held that Johnson's accidental injuries arose out of and in the course of her employment. While the Board acknowledged Stormont Vail's argument that because Johnson's falls were unexplained, they were caused by neutral risks, it ruled that it was Stormont Vail's burden to prove the existence of a personal or neutral risk that would deny a finding of a compensable injury.

The Board found that a neutral risk barred compensability for injuries when the neutral risk had no particular employment or personal character. The Board noted the record lacked proof of an element of personal character to the incidents or injuries, but in

5

looking to the context of Johnson's falls, there was an *employment character*—"namely Johnson's need to walk to get the job done." Thus, the Board found both of Johnson's injuries were compensable:

> "Neither fall involved what would be only a neutral risk, but rather they involved neutral risk with a particular employment character. Walking was required to do the work and Johnson was injured while walking. The Board does not view the [Kansas Workers Compensation Act] as requiring that a worker explain why an accident or injury occurred when the worker sustains an injury by accident while performing job tasks."

Thus, the Board's logic is manifest. It concluded that Johnson's injuries by accident arose out of and in the course of her employment because her work required her to walk. In the context of her job, the need to walk shows the employment character of the neutral risk here. By applying the statutory definition, the Board ruled her injuries were compensable. Stormont Vail appealed to this court.

Stormont Vail raises two issues on appeal. First, in its view, the Board improperly interpreted and applied the law by finding that there was not a neutral risk that barred compensation and erred when it concluded that Johnson's accidents arose out of and in the course of her employment. Second, the Board erred by placing the burden of proof on Stormont Vail to establish Johnson's accidents were caused by a neutral risk.

In response, Johnson argues that we should affirm the Board. She contends that she met her burden to show her accidents arose out of and in the course of her employment, and that Stormont Vail's failure to establish a neutral risk was merely ancillary to the Board's finding that she had proved a work-related injury. Johnson maintains that the burden of proving a neutral risk caused her accidents was Stormont Vail's since the hospital argued that she had failed to meet her burden. And Johnson contends that it was not her burden to prove a negative. We will address the issues in that order after a brief review of some fundamental principles of workers compensation law.

6

*We review some legal principles that guide us.*

It is fundamental that to receive a workers compensation award, a worker must suffer a work-related injury and the law places the burden on the worker to prove that the injury arises out of and in the course of the worker's employment. K.S.A. 2018 Supp. 44-501b(c). But the circumstances here give us more to consider—the application of an amendment to our Workers Compensation Act.

There are four classes of injuries that are not compensable under the Act. By enacting K.S.A. 2018 Supp. 44-508(f)(3)(A), the Legislature specified that the familiar phrase, "arising out of and in the course of employment," as used in the Act, shall *not* be construed to include an:

> "(i) Injury which occurred as a result of the natural aging process or by the normal activities of day-to-day living;
> "(ii) *accident or injury which arose out of a neutral risk* with no particular employment or personal character;
> "(iii) accident or injury which arose out of a risk personal to the worker; or
> "(iv) accident or injury which arose either directly or indirectly from idiopathic causes." (Emphasis added.)

In other words, injuries that are caused by natural aging or day-to-day activities, injuries from neutral risks with no particular employment or personal character, injuries from risks personal to the worker, and injuries from idiopathic causes are not compensable under our system of workers compensation. Here, we must focus on the law on neutral risks.

Our tasks here are well established. The interpretation or construction of the Act is a question of law. But once that interpretation or construction occurs, the ultimate question of whether an accident arises out of and in the course of employment is a

7

question of fact. Determining whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Estate of Graber v. Dillon Companies*, 309 Kan. 509, Syl. ¶ 3, 439 P.3d 291 (2019). Applying that rule here means that we will not disturb the Board's findings on appeal that Johnson's two injuries arose out of and in the course of her work if those findings are supported by substantial competent evidence.

*The Board did not misinterpret the law.*

While the hospital does not argue with the Board's findings of fact, it does claim a legal error. Stormont Vail's argument can be summarized in the following syllogism:

- All injuries from neutral risks, such as unexplained falls, are noncompensable under the Workers Compensation Act;
- Johnson suffered injuries from two unexplained falls;
- thus, Johnson's injuries are noncompensable.

The flaw in Stormont Vail's logic is in the first premise. That statement ignores the complete statute. It omits important qualifying language used by the Legislature in writing the exemption statute. Instead, Stormont Vail argues in general terms about unexplained falls being neutral risks, and neutral risks are no longer compensable under workers compensation law. We cannot ignore this language as Stormont Vail does.

The exemptions statute is explicit: "The words 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include: . . . accident or injury which arose out of a neutral risk with no particular employment or personal character." K.S.A. 2018 Supp. 44-508(f)(3)(A)(ii). The last part of the sentence, "with no particular employment or personal character," is significant. These words have meaning, and the Legislature included them for a reason.

8

An understanding of the importance of this qualifying language comes from our caselaw on neutral risks. The wellspring for categories of risk in workers compensation cases can be traced to the worker killed by sniper fire—*Hensley v. Carl Graham Glass*, 226 Kan. 256, 258, 597 P.2d 641 (1979). Citing 1 Larson, Workmen's Compensation Law § 7 (1978), the *Hensley* court held that there are three general categories of risks in workers compensation cases:

(1) those distinctly associated with the job;

(2) risks which are personal to the worker; and

(3) the so-called neutral risks *which have no particular employment or personal character*.

Note the qualifying phrase, "which have no particular employment . . . character" has been in our caselaw from the beginning. The phrase is, in our view, either a technical term or a term that has through caselaw acquired a peculiar meaning. This means that the 2011 amendments to our Act have not modified the law of neutral risks, but have explicitly incorporated these technical terms into the law. The question arises, then, how are we to construe this statute here?

First, we look at our law dealing with statutory construction—K.S.A. 2018 Supp. 77-201. It teaches us that "[w]ords and phrases shall be construed according to the context and approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings." The next logical step, then, is to see what peculiar meaning these words have acquired with the passage of time and the rendering of interpretations made by the Legislature and the courts.

After *Hensley*, this court in *McCready v. Payless Shoesource*, 41 Kan. App. 2d 79, 200 P.3d 479 (2009), relied on the categories of risk set out in that case. The *McCready* panel held that injuries sustained in an unexplained fall were compensable under the

9

Workers Compensation Act in effect at that time. The court held that, "McCready fell in the course of her employment with no explanation. As the Board has ruled, this is a neutral risk that is compensable." 41 Kan. App. 2d at 488. It is important that the panel affirmed the Board's finding of fact that her injuries arose out of and in the course of her employment.

Here, the Board clearly held that it was Johnson's burden to prove that her injuries arose from her employment. The Board made this finding of fact on her walking as part of her job tasks:

> "In both instances, walking was part of Johnson's work duties and she was working when she fell. As such, her cases are compensable. Neither fall involved what would be only a neutral risk, but rather they involved neutral risk with a particular employment character. Walking was required to do the work and Johnson was injured while walking. The Board does not view the KWCA as requiring that a worker explain why an accident or injury occurred when the worker sustains an injury by accident while performing job tasks."

The record on appeal reveals that the evidence supports those findings, and we will not disturb them on appeal. Simply put, Johnson was walking down the hall at work both times when she fell. Stormont Vail does not dispute this finding in its brief except to contend it is legally erroneous based on its mistaken view that neutral risk injuries are now noncompensable. It does not dispute the facts. It disputes the law.

We reject Stormont Vail's implicit argument that injuries arising from all neutral risks are now noncompensable since the 2011 amendments to the Act. This is just not so because the language of the law expresses an exclusion for neutral risks that have no employment character. If the Legislature wanted to eliminate injuries arising from all neutral risks, it could have said so explicitly. But it did not. It included the express qualifying language found in *Hensley*.

10

Walking further down this line, we come to *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 595-96, 257 P.3d 255 (2011). The court acknowledged that no bright-line test for what constitutes a work injury is possible. The court, however, found the proper approach is to focus on whether the injury occurred as a consequence of the broad spectrum of life's ongoing daily activities, such as chewing, breathing, or walking in ways that were not peculiar to the job, or as a consequence of an event or continuing events specific to the requirements of performing one's job. "'The right to compensation benefits depends on one simple test:  Was there a work-connected injury? . . . [T]he test is not the relation of an individual's personal quality (fault) to an event, but the relationship of an event to an employment.'" 292 Kan. at 595-96 (citing 1 Larson's Workers' Compensation Law § 1.03(1) [2011]).

The *Bryant* court found that the focus of inquiry should be on whether the activity that results in injury is connected to, or is in, the performance of the job. The statutory scheme does not reduce the analysis to an isolated movement—bending, twisting, lifting, walking, or other body motions—but looks to the overall context of what the worker was doing—welding, reaching for tools, getting in or out of a vehicle, or engaging in other work-related activities. 292 Kan. at 595-96.

After *Bryant* came *Graber,* a case that focused on the idiopathic exception. We will deal with *Graber* more extensively in our treatment of Stormont Vail's argument about its burden of proof. But we want to point out that *Graber* reversed the Board because no evidence supported its finding that Graber's fall resulted from an idiopathic cause. The court thus reversed the Board's ruling that Graber's injuries were not compensable. Here, in contrast, there is evidence of the fall having an employment character, a fact that is not disputed.

The Board properly looked at the overall context of Johnson's job duties when it made its ruling. With the guidance of *Bryant*, and its one simple test, when we ask "was

11

there a work related injury?" we can only say, "Yes." Although Johnson's injuries arose from unexplained falls, she was entitled to workers compensation benefits because under the circumstances, the neutral risks had a particular employment character. The entire statute must be applied—not just one part.

*It is reasonable to require parties to prove their claims.*

Stormont Vail argues that the Board erroneously shifted the burden and required the hospital to prove that Johnson's accidents resulted from a neutral risk. Essentially, Stormont Vail argues that K.S.A. 2018 Supp. 44-501b(c) required Johnson to also prove her accidents were *not* caused by a neutral risk. In other words, once Johnson proved her right to compensation under 44-501b(c), she also had to prove her injuries did not arise from a neutral risk. Essentially, Stormont Vail argues that Johnson should have to prove a negative.

We find Stormont Vail's argument that a claimant must prove the inapplicability of one of the four exempt classes of injury unpersuasive. Stormont Vail does not argue that Johnson needed to also prove her accidents did not result from her natural aging process; or prove the injuries were not from a risk personal to her; or that they were not caused by an idiopathic cause. We must ask then, if it was Johnson's burden to prove one negative, that on neutral risks, why then is it not also her burden to prove three other negatives, as well?

Stormont Vail does not explain why Johnson has to prove the inapplicability of one, but not all four, exempt causes. If the Legislature wanted the claimant to prove in each claim that his or her injuries were not in the four exempt classes, it could have written that requirement into the statute. But it did not, and we will not rewrite the law as Stormont Vail wishes it to read.

There is an order of proof at work here. First, Johnson provided evidence of her falls and resulting injuries. Then, it was Stormont Vail that raised neutral risk as a defense to Johnson's accidents at work. Once the claimant has met the burden of proving a right to compensation, the employer may seek relief from liability based on any statutory defense or exception. This court has often held that the employer has the burden of proof on any claimed defenses or exceptions. *Messner v. Continental Plastic Containers*, 48 Kan. App. 2d 731, 751, 298 P.3d 371 (2013). In *Rash v. Heartland Cement Co.*, 37 Kan. App. 2d 175, 186, 154 P.3d 15 (2006), the court ruled that once the claimant has met their burden, the respondent employer has the burden to show any exception.

The Board found that it was Stormont Vail's burden to establish a neutral risk barring Johnson from compensation and that the hospital had not done so. For this finding, the Board relied upon language in *Smalley v. Skyy Drilling*, No. 111,988, 2015 WL 4366531, *4 (Kan. App. 2015) (unpublished opinion), which held that it was an employer's burden to prove the existence of a neutral risk that would deny a finding of a compensable injury. Stormont Vail criticizes *Smalley* as an opinion without explanation, and without citation to any precedent. The hospital contends that it was somehow incongruous for the *Smalley* panel to acknowledge the claimant's burden to prove his right to compensation and then hold it was the employer's burden to prove the existence of a neutral risk.

We are not convinced by Stormont Vail's criticism of *Smalley*. The *Smalley* panel relied on the definition of "burden of proof" in the Act to rule that the injured worker "simply must prove that he or she has a right to compensation and the various conditions on which that right depends 'are more probably true than not true.'" *Smalley*, 2015 WL 43666531, at *4. The language in the statute has not changed. Under K.S.A. 2018 Supp. 44-501b(c) and K.S.A. 2018 Supp. 44-508(h), a claimant must simply prove that they

13

have a right to compensation and the various conditions on which that right depends are "more probably true than not true." Stormont Vail's argument that the ruling was "without . . . precedent" does not refute the statutory analysis made by the *Smalley* panel. In fact, we find the panel's analysis persuasive.

Johnson thus did not have to prove that the basement floors were not clean, were not dry, or were sticky as a result of commercial cleaner residue; she just had to show that it was more probably true than not that she was walking in the course or in furtherance of her duties when she fell. See *Smalley*, 2015 WL 4366531, at *4.

Finally, we return to *Graber*. The Kansas Supreme Court held that the plain language of K.S.A. 2018 Supp. 44-508(f)(3)(A)(iv) about the idiopathic exception renders an injury noncompensable *only upon proof* that the injury or accident arose directly or indirectly from a medical condition or medical event of unknown origin peculiar to the claimant. *Graber*, 309 Kan. at 524. This language is clear. If a party wants to claim an exception, then there must be proof of that exception. The opinion does not require that the claimant of workers compensation benefits must prove the negative. That is, the injured worker in *Graber* need not prove that the injuries are *not* from an idiopathic condition.

Like idiopathic causes, neutral risks are also listed as exempt causes of injury. Thus, by analogy, we can see then that if a party claims that the injuries are the result of neutral risks with no particular employment or personal character, there must be proof of those circumstances. It is reasonable to place the burden upon the party making such a claim to prove that claim. Accordingly, if the burden is on the employer to provide proof that one subparagraph (f)(3)(A) exception applies to prevent liability for an injury, as the Supreme Court ruled in *Graber,* then it is reasonable to conclude the same holding should apply to the other exceptions in that statute, such as neutral risk.

14

The Board found that Johnson met her statutory burden and, under these circumstances, the burden was then on Stormont Vail to support its claim of a neutral risk with no particular employment character, to deny a compensable injury. The Board was right to do this. The burden to prove the existence of a personal or neutral risk that would deny a finding of a compensable injury belonged to Stormont Vail. We hold that the Board was correct in its ruling, and we reject Stormont Vail's argument to the contrary.

We affirm the Board's decision.